STATE of Maine

v.

**Richard J. POULIN.**

Supreme Judicial Court of Maine.

Aug. 6, 1970.

William H. Clifford, Jr., County Atty., Auburn, for plaintiff.

Gaston M. Dumais, Lewiston, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE, and POMEROY, JJ.

MARDEN, Justice.

On appeal from a conviction for breaking, entering and larceny in the nighttime.

The case arises from a series of events occurring in Lewiston on the late evening of January 5, and early morning of January 6, 1969. The respondent, whose car and person were known to the Lewiston Police, was first observed operating his automobile in Lewiston at about 11:30 p. m. on January 5, 1969. At this time both the car and the respondent were recognized by Officer S, the car by its registration number, and the respondent while lighting a cigarette when stopped at a traffic light. The car identified by registration number was observed again shortly after midnight in another part of the City, by the same officer.

At about 1:50 a. m. of January 6, 1969 Officer B operating a police cruise car, met a car coming toward him on Avon Street, but before the cruiser and the oncoming car met to pass, the oncoming car turned easterly into a driveway and as Officer B approached the driveway, one man dismounted from the passenger side and ran away. This car, the same earlier seen belonged to the respondent. As Officer B approached the automobile he noted that the trunk lid was open and in the trunk of the car was a safe, the size of which he approximates as 2′x2′x2′, another witness 2′x2′x3′ and weighing 250–300 pounds. He reported his observation to police headquarters by radio. Avon Street is westerly of four streets, Avon, Winter, Summer and Spring in the order named. Holland Street runs from the northerly end of Avon easterly across

Winter, Summer and Spring and continues easterly. Southerly from Holland is Bridge Street running from the southerly end of Winter easterly across Summer and Spring and continuing easterly, and next southerly is West Bates Street running from Avon Street easterly across Summer and Spring and continuing easterly. Winter Street terminates easterly of Avon, westerly of Summer and northerly of West Bates. The Eastern Fire Protection Company property (Eastern) lies on the easterly side of Spring between Holland and Bridge Streets. From within the rectangle formed by Avon Street on the west, Spring Street on the east, Holland Street on the north and West Bates Street on the south and the adjoining Eastern property, comes much of the circumstantial evidence in the way of footprints in the snow which bear upon the conviction.

At about 2:30 a. m. in the morning Detective F started the motor and drove the Poulin car from the driveway on Avon Street to the police garage. The starting switch was such that no key was needed. In the process of this removal a black glove for the left hand was observed in the seat of the car and upon arrival at the police garage the officer took the glove from the car and marked it for identification.

Meantime Officer D in response to radio information went to Bridge Street and as he passed a residence identified as No. 17 on that Street, known to be the residence of appellant's parents, he saw the appellant entering the house approaching at a run from the direction of Eastern. This occurred at about 1:55 a. m. and the officer thereafter "stood" guard at Eastern. Also meantime, Officer R, in response to radio information, arrived in the vicinity of 17 Bridge Street at about 2:00 a. m. and a few minutes thereafter as a taxi approached and appellant emerged from the house and was about to enter it, Officer R addressed Poulin and requested him to come to the Police Station. Poulin replied "okey, I want to speak to

my father first," Poulin re-entered the home at 17 Bridge Street and upon his return to the Street, entered the rear seat of the police car and Officer R took him to the Police Station where he was "booked for investigation" at 2:45 a. m. At this time Poulin's personal belongings were taken from him, which items included a black glove for the right hand. It was at this time that he was deprived of his freedom and must be considered arrested.

Up to this time no break had been reported to the police, but the safe had been recognized by Officer R as similar to ones in business establishments covered by his patrol and, in pursuing the identity of the safe, a break in the "L & B" Service Station with a safe missing was discovered by Officer R about 3:00 a. m.

Captain H came into the case sometime prior to 3:20 a. m. and at 3:20 to 3:30 a. m. he inspected the Poulin automobile in the police garage, observed the safe in the open trunk and found on the floor of the front seat on the passenger side of the vehicle a tool commonly known as a wrecking bar or a crowbar of which he took possession and marked it for identification.

At about 4:00 a. m. Captain H interviewed Poulin, and gave him the Miranda warning. At about 5:00 a. m., photographs of the safe in the car were taken. Thereafter, at about 6:00 a. m. appellant was booked for breaking, entering and larceny in the nighttime.

After daybreak Officers inspected the area between the point where the car was abandoned on Avon Street and thence easterly across lots toward Eastern and at places on Winter, Summer and Spring Streets, and at Eastern found footprints in the snow, the heel of which made a distinctive impression. Thereafter footprints with the same characteristics were found at the scene of the break at L & B Service Station. At about 10:00 a. m. Poulin's shoes were taken from him and compared with the footprints previously observed. The pattern on the heel of Poulin's shoe and the impressions in the snow matched.

From the trial, in which the accused did not take the stand, resulting in the conviction, seven points of appeal were designated.

(1) For denial of a motion for acquittal.

(2) and (3) Alleging that the verdict was contrary to the evidence.

(4) That the Court erred in admitting the testimony of Officers B, D, R, C, H, P, and F "to which objections were made."

(5) Error in charging the jury that the defendant did not have to take the stand followed by an instruction as to inference of guilt from stolen goods in the defendant's possession which "he does not explain * * * away by testifying in his behalf."

(6) Disproportionate use of the word "guilt" as compared with use of the word "innocent" in the charge to the jury.

(7) "The defendant was substantially prejudiced and deprived of a fair trial by reason of the following circumstances:

"The State's evidence in its entirety was developed after the police illegally seized and searched defendant's car without probable cause and without a search warrant and further illegally detained and arrested defendant without probable cause and without any warrant for his arrest and illegally seized his shoes without his permission while he was being detained."

 The charge against appellant was founded largely upon circumstantial evidence, which can support a conviction. State v. Merry, 136 Me. 243, 247, 8 A.2d 143. Here the presence of the accused and his car upon the streets, the appearance later of his car on Avon Street with the safe in the trunk, the flight of an occupant of the car, appellant's appearance in the Avon-Bridge Street area by observa-

tion almost immediately thereafter, the tracks in the snow in that area which his shoes matched, the black gloves, the break at the filling station from which the safe came, and the same footprints there, were properly for jury consideration under proper instructions,—which were given.

Upon this evidence it cannot be found that a jury was not competent to find that the accused was a party involved. Points of appeal 1, 2 and 3 are denied.

■ The contention of error in the admission of the testimony of seven officers does not identify the areas of aggrievement and such blanket designation is insufficient to require review, absent an exceptional case. McKown v. Powers, 86 Me. 291, 293, 29 A. 1079, and State v. Carleton, 148 Me. 237, 239, 92 A.2d 327. Refusing to recognize this case as the exceptional one is of no prejudice to appellant for the only recorded objections upon which to base point of appeal 4 are as follows:

To the admission of the photograph of the car offered through Officer F who took it because the safe was not "tied in" and that it was too "remote" in connection with the defendant.

The photograph was qualified as a fair and accurate representation of what it purported to depict.

To the admission of appellant's shoes because they were not tied in with the offense, that they were taken against the appellant's will, that there was no evidence that appellant was wearing them at pertinent times.

To the admission of photographs of the footprints taken at L & B Service Station, that the officer photographer was not qualified, and that there was no evidence as to when the footprints were made.

Here also the photograph was qualified as a fair and accurate representation of what it purported to depict.

To the admission of the crowbar, that it was not found in the possession of the defendant, that its connection with defendant was too remote.

The presiding Justice considered the objections as expressed and made it clear that the "weight" to be given the exhibits as evidence was for the jury. There was no error. Point 4 is denied.

■ Explaining to a jury, as was here required, that the law does not require an accused to take the witness stand in his own behalf (15 M.R.S.A. § 1315) and in the same instructions to explain that stolen goods in the possession of the accused soon after they were taken raises an inference of guilt if the accused does not account for that possession, State v. Lizotte, Me., 230 A.2d 414, [5–7] 418, is delicate, though both instructions are sound in law.

Instructing the jury in terms saying on the one hand that the respondent does not have to testify, and on the other, that if he fails to testify he is exposed to the risk of being found guilty by the inference raised by stolen goods in his possession, without more, might lead to prejudicial confusion. Particularly with reference to the treatment of the inference, it is necessary to observe the comment in State v. Intoxicating Liquors, 80 Me. 57, 61, 12 A. 794, where it was said with relation to *prima facie* evidence or *presumption* evidence that:

"They mean that such evidence is competent and sufficient to justify a jury in finding a defendant guilty, provided it does, in fact, satisfy them of his guilt beyond a reasonable doubt, and not otherwise."

In the instant case, however, and within the compass of point of appeal 5, there was articulate and discriminating presentation of these principles to the jury.

We find no error in this charge, and point of appeal 5 is denied.

■ As to the relative frequency of the use of the words "innocent" and "guilt," in the charge to the jury, no objection was voiced by trial counsel and such relative frequency per se cannot be controlling. The adequacy of the charge is to be measured by the charge as a whole. Welch v. Jordan, 159 Me. 436, 445, 194 A.2d 841. No case has been cited to us, nor do we find one, to the contrary. A similar criticism to a charge was made in Driscoll v. United States, 1 Cir., 376 F.2d 254, in which the charge used the word "guilty" sixteen times and "not guilty" five times. The charge was measured as a whole and held to be fair and impartial. Point of appeal 6 is denied.

Such substance as exists within the points of appeal is found in Point 7 and in exploying the aggrievement there alleged, the complaints made by indirection in Point 4 are by necessity reviewed. These center on the circumstances under which the appellant's car and its contents were reduced to possession by the police, photographs of the car showing the safe within it, and the presentation of other items from the car which were offered as real evidence.

■ This feature of the case may be simplified at the start by the realization that observation of "that which is open and patent" is not a search. State v. MacKenzie, 161 Me. 123, 137, 210 A.2d 24. The constitutional guaranty against unreasonable searches and seizures "does not prohibit a seizure without warrant where there is no need of a search, and where the contraband subject matter is fully disclosed and open to the eye and hand." 47 Am.Jur.. Searches and Seizures, § 20.

■ The safe was openly and patently visible at all times and the recording of that visual observation by photographic process, though some three hours and fifteen minutes after the arrest, is of no legal significance.

It must be noted as well that the objections to the admission as evidence of the photograph and the crowbar, later discussed, were not based upon constitutional grounds.

These rules immediately remove from consideration the safe, and the black glove for the left hand. The only item which could be classified as one revealed by a search is the crowbar which was found "on the floor of the front seat, on the passenger side of the vehicle." It is not clear whether the bar was beneath the front seat or visible on the floor forward of the front seat. In the latter case, it would not be found as the result of a search. See also Corbin v. State, 426 S.W.2d 238 [1] 239 (Texas Cr.App.1968). If it were beneath the front seat, its discovery and subsequent use as an exhibit would be measured by whether its discovery (search) was reasonable under the existing circumstances.

■ What of the custody of the car? It was legal for several reasons. The acquaintance of the officer with the car and its owner, the operation of the car from Avon Street into a driveway not identified as being pertinent to any property in which the appellant or his parents had any proprietary interest, the flight of an occupant and the open presence of a safe, known to be of a type used by places of business within the officer's patrol, in the trunk of the car justified the officer in having probable cause to believe that the safe was stolen. As said in Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 283, 69 L.Ed. 543:

"The search for and seizure of stolen * * * goods, * * *, are totally different things from a search for and seizure of a man's * * * (properties) for the purpose of * * * using them as evidence against him. * * * The seizure of stolen goods is authorized by the common law; * * *."

Bearing in mind the size and weight of the safe, which questions the ability of one

person to remove it from the car and the fact that the car itself was an instrumentality of a probable crime, its reduction to protective custody and removal to the police garage was entirely reasonable. See Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); State v. McCoy, 249 Or. 160, 437 P.2d 734, [5] 738 (1968); Johnson v. State, 238 Md. 528, 209 A.2d 765, [8] 770 (1965); Abrams v. State, 223 Ga. 216, 154 S.E.2d 443, [3] 447 (1967); Boyden v. United States, 363 F.2d 551, [1] 553 (9 CCA 1966); and State v. Anderson, 260 Iowa 122, 148 N.W.2d 414, [4] V 418 (1967).

Seizure of the abandoned (used in a non-legal sense) vehicle was reasonable for the purpose of preventing guilty parties from returning and using the car for flight. Russell v. State, 240 Ark. 97, 398 S.W.2d 213 (1966).

Stated broadly, "reasonable police procedures, performed to effectuate a governmental interest other than the discovery of incriminating evidence, do not constitute a search within the meaning of the Fourth Amendment." United States v. Laub Baking Co. et al., 283 F.Supp. 217, [9] 225 (D.C.Ohio 1968). See also Fagundes v. United States, 340 F.2d 673, [2] 676 (1 CCA 1965).

The car was in lawful custody, and the collective facts which the police possessed were reasonable grounds for suspicion that appellant was guilty of the felony, *MacKenzie, supra,* 161 Me., at page 138, 210 A.2d 24, and his arrest without a warrant was lawful. Any search,—if in fact a "search" was involved, occurred only after appellant's arrest and within forty-five minutes of that arrest.

Even though in our view this might properly be held to be "substantially contemporaneous" with the arrest, incidental to it and therefore valid, we prefer to rest the legality of search on the doctrine enunciated in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). *Cooper* has been generally viewed as relaxing the seemingly rigid requirement of a warrant earlier imposed by Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). In *Cooper,* as in the instant case, the car was held in lawful police custody as ".evidence" related to the very matter for which the defendant had been arrested. Even though the *Cooper* search was not deemed incidental to the arrest, it was held to be reasonable and therefore lawful. This distinction between *Preston* and *Cooper* was affirmed in the discussion of these cases found in Dyke v. Taylor, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968). In that case the Court said:

"Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. * * * The cases so holding have, however, always insisted that the officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search."

The facts of the instant case clearly satisfy this requirement. The *Cooper* rule was applied to facts very like our own to sustain the lawfulness of a search not incidental to arrest in Schoepflin v. United States, 391 F.2d 390 (9 CCA 1968). There the automobile was in police custody when searched, held as evidence with respect to robbery, for which offense defendant had previously been arrested. To the same effect People v. Brown, 38 Ill.2d 353, 231 N.E.2d 577 (1967); People v. Jones, 38 Ill.2d 427, 231 N.E.2d 580 (1967); Stewart v. People, 162 Colo. 117, 426 P.2d 545, (1967); and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (Opinion June 22, 1970).

■ The objection to the use of appellant's shoes as a violation of his constitutional privilege against self-incrimination raises the perennial question, which is as frequently answered, whether the constitutional privilege extends to more than

freedom from testimonial compulsion. This has been decided many times and is exemplified by Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) and specifically passed upon as to *shoes* in United States v. Hensley, 374 F.2d 341, [22] 353 (6th CCA 1967), cert. denied 388 U.S. 923, 87 S.Ct. 2139, 18 L.Ed. 2d 1373; reh. den. 389 U.S. 891, 88 S.Ct. 25, 19 L.Ed.2d 210. The taking, use and submission of the shoes as evidence constituted no error.

Point of appeal 7 is without merit.

Appeal denied.