### STATE of Maine

v.

### Hollis G. DOW and Forrest E. Wardwell, Jr.

Supreme Judicial Court of Maine.

Oct. 20, 1978.

---

Michael E. Povich, Dist. Atty., James E. Patterson (orally), Asst. Dist. Atty., Ellsworth, for plaintiff.

Libhart, Ferris & Dearborn by Wayne P. Libhart (orally), Willian N. Ferm, Ellsworth, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

DELAHANTY, Justice.

The defendants prosecute this joint appeal from judgments of the Superior Court, Hancock County, finding them guilty, after separate bench trials,[1] of possessing forty-nine short lobsters in violation of 12 M.R. S.A. § 4451(1).[2] Each defendant was fined $1,135.00.

Because of the numerous questions presented, we have revised the defendants' format, and mindful of the points of appeal properly before us, we have organized our opinion in the following manner:

(1) whether the warrantless seizure of the lobsters violated defendants' constitutional rights,

(2) whether the evidence was sufficient to sustain the State's allegation that the length of the lobsters was less than allowed by law,

(3) whether the evidence was sufficient to indicate that both defendants possessed the lobsters within the meaning of the statute and whether each was liable for the statutory fine, and

(4) whether the fines were imposed in violation of the statute or of defendants' constitutional rights.

Upon consideration of the questions, we hold that the legal issues raised by the defendants do not suffice to show error. We therefore deny the appeal.

The only individual who testified at the trial was Orville Nisbet, a Coastal Warden employed as such for over twelve years by the Department of Marine Resources. He testified that on September 17, 1977 at about 5:30 p. m., he had secreted himself in the bushes along the shore in the Oceanville

---

1. Defendant Wardwell was tried first and convicted. Upon stipulation that the evidence against defendant Dow would be identical to that already introduced against Wardwell, the presiding Justice proceeded to find Dow guilty.

2. Section 4451 of 12 M.R.S.A. provides in pertinent part:

Lobsters; length, double gauge measure

The commissioner [of the Department of Marine Resources] shall provide a measure, designated as the state double gauge lobster measure, for determining the legal length of lobsters. The commissioner shall cause one gauge on the measure to be 3³/₁₆ inches in length and the other 5 inches in length. No evidence concerning the legal length of any lobster is admissible in any court in the State in any manner, unless the legal length of the lobster has been determined by such a measure. . . .

1. Short lobsters illegal; method of measurement; penalty. It is unlawful for any person to . . . have in possession any lobster, alive . . ., which is less than 3³/₁₆ inches in length as determined by the state double gauge

lobster measure by measuring from the rear of the eye socket along a line parallel to the center line of the body shell to the rear end of the body shell.

A. And whoever does so shall be punished by a fine of $10 and in addition by a fine of $5 for each such lobster involved, up to and including the first 5, and by a fine of $25 for each such lobster in excess of 5, or by imprisonment for not more than 90 days, or by both.

. . . . .

3. Exception if lobster immediately liberated alive when caught. If any lobster which is shorter than 3³/₁₆ inches in length, . . . as determined by the method of measuring provided in subsection[ ] 1 . . ., is immediately liberated when caught, the person who so liberates the lobster is excused from the unlawful possession of that lobster.

This statute was repealed and replaced by 1977 Me. Acts c. 661, codified at 12 M.R.S.A. § 6431, effective January 1, 1979.

area of Stonington. From that vantage point, he observed a boat operating in Pickering's Cove. Later, the boat motored out of the cove and came ashore on a nearby beach. The beach lay at the foot of an old clam factory which abutted a large parking lot. He observed the defendants walking up the beach lugging two large open containers toward a green van in the parking lot. As the defendants reached the rear of the van, Warden Nisbet made his presence known, and the defendants set down the containers. The containers—one a galvanized tub, the other a clam hod—were brimming with lobsters, several of which, in the warden's judgment, were "short."[3] The warden produced his State of Maine double gauge lobster measure and set about to measure the lobsters.[4] On each lobster, he placed his measure on the shell just behind the eye socket and parallel to the center line. After measuring each lobster on both sides of the center line, the warden determined that forty-nine of the lobsters were less than the legal minimum of three and three-sixteenths inches. Warden Nisbet then turned to defendant Wardwell and asked him several times if he would like to have an opportunity to measure the lobsters. Wardwell made no response at first and then gave a "no" shake with his head.

Shortly thereafter, Constables Joyce and Powers of the Stonington Police Department arrived on the scene and helped Warden Nisbet return the forty-nine undersized lobsters to the Atlantic Ocean. Returning to the parking lot, the warden issued a summons to each defendant.

## I. The Seizure of the Lobsters

A common contention of both defendants is that Warden Nisbet's actions violated their fourth amendment rights in that the defendants were in a "protected place" and the warden had no probable cause for his warrantless "search."

To invoke the protection of the warrant requirement, it must be demonstrated that a search in fact took place. Here, the defendants were observed walking on a beach and were accosted in a large parking lot. The warden, who apparently had as much right to be in the parking lot as the defendants, merely observed that which was completely open to public view, and his observations, guided by more than twelve years' experience, alerted him to the fact that the defendants were in obvious possession of contraband. Accordingly, we find that the defendants have failed to demonstrate that a search, within the meaning of the fourth amendment, took place. The case is a textbook example of the "open fields" doctrine first announced by Justice Holmes fifty-four years ago in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). *Hester* simply held that the "protection accorded by the Fourth Amendment . . . is not extended to the open fields." *Id.* at 59, 44 S.Ct. at 446, 68 L.Ed. at 900. Open, obvious, and notorious criminal activity conducted in a public place has never been accorded constitutional protection under the fourth amendment.

As we held in *State v. MacKenzie*, 161 Me. 123, 137, 210 A.2d 24, 32 (1965), "[a] search implies some exploratory investigation. It is not a search to observe that which is open and patent . . .", *quoting State v. Griffin*, 84 N.J.Super. 508, 517, 202 A.2d 856, 861 (1964). We applied the same rationale in the companion cases of *State v. Poulin*, Me., 277 A.2d 493, 495 (1971), and *State v. Mosher*, Me., 270 A.2d 451, 452–53 (1970). In a case also entitled *State v. Poulin*, Me., 268 A.2d 475, 480 (1970), we held that no search had occurred where a police officer observed a 250-pound safe lying in the open trunk of an automobile. We invoked the "open fields" rationale again in *State v. Stone*, Me., 294 A.2d

---

3. Warden Nisbet testified that of the fifty-nine lobsters he subsequently measured, forty-nine were found to be short, and roughly seventy-five percent of those were short by at least one-half inch.

4. Over defense objection, the warden's lobster measure, issued by the Commissioner of Marine Resources as authorized under 12 M.R. S.A. § 4451, was found by the presiding Justice to be wholly accurate.

683, 688–89 (1972), and found no fourth amendment implications where a police officer, using a flashlight, observed an apparently loaded carbine lying on the back seat of an automobile. *See also State v. Cowperthwaite*, Me., 354 A.2d 173, 176 (1976); *State v. Lafferty*, Me., 309 A.2d 647, 654 (1973).

The defendants argue that *Hester's* force has been limited by *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), which have expanded the fourth amendment's protection to areas outside of the dwelling. To the contrary, we find that the *Hester* doctrine remains entirely intact. *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977); *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *Air Pollution Variance Board v. Western Alfalfa Corp.*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974); *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *United States v. Johnson*, 182 U.S. App.D.C. 383, 397, 561 F.2d 832, 846, *cert. denied*, 432 U.S. 907, 97 S.Ct. 2953, 53 L.Ed.2d 1080 (1977) (Leventhal, J., concurring). Indeed, Justice Stewart, writing for the *Katz* Court, flatly stated that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz, supra* 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582. In *State v. Stone, supra,* we recognized a long line of authority to the effect that "an owner can be held to have exposed property to public view notwithstanding that artificial illumination, specifically directed, might be required to render the property visible." *Id.* at 688–89.

5. Our finding that no search took place obviates defendants' argument that the warrantless search provisions of 12 M.R.S.A. § 4551 do not justify the warden's actions.

6. The defendants preserved this point for appeal by a timely pre-trial motion to produce the lobsters. The motion was denied.

7. The thrust of their argument is summarized in the defendants' brief:

It is also clear, contrary to their contentions, that the defendants were not in a constitutionally protected place where they held a reasonable and justifiable expectation of privacy. Open beaches and large parking lots to which the public has access simply do not afford privacy.[5]

## II. The Release of the Lobsters

■ The defendants claim that returning the lobsters to the Atlantic Ocean deprived defendants of physical evidence the inspection and presentation of which might have afforded them a more effective defense.[6] They argue that to convict them solely on the basis of the warden's testimony, that is, without introducing the lobsters into evidence, constitutes a violation of what defendants refer to as the "Primary Evidence Rule." They would thus have us hold that the State must introduce the relevant physical evidence wherever remotely possible.[7]

The rule in this state is to the contrary. In *State v. McLain*, Me., 367 A.2d 213, 219 (1976), we held that "[i]f the essential elements of a crime are established by testimonial evidence of sufficient force, physical evidence is not a prerequisite for conviction." In *McLain*, we upheld a larceny conviction over defendant's objection that the allegedly stolen property was not introduced at trial. A similar result was reached in *State v. Creamer*, Me., 359 A.2d 603 (1976), in the context of a prosecution for receiving stolen goods.

Our holdings in *McLain* and *Creamer* conform to the view generally accepted in the United States. *See* 4 Wigmore, Evidence § 1181 (Chadbourn rev. 1972). For example, in prosecutions for illegal possession of

[S]ince the State deliberately chose to destroy the primary evidence of the illegality, the *corpus delicti* which could conclusively demonstrate the Defendant's [sic] guilt or innocence of the crime charged, the State should not now be permitted to introduce its own form of secondary evidence. (emphasis in original).

It is clear that no violation of the so-called Best Evidence Rule, M.R.Evid. 1002, took place in this case inasmuch as that rule applies only to writings, recordings, and photographs.

alcohol, it has been held that the alcohol itself need not be produced. *Burney v. United States*, 339 F.2d 91 (5th Cir. 1964); *Commonwealth v. Welch*, 142 Mass. 473, 8 N.E. 342 (1886); *Napolet v. Board of Liquor Control*, 119 N.E.2d 93 (Ohio App.1953); *Williams v. State*, 179 Tenn. 247, 165 S.W.2d 377 (1942). In prosecutions for drunken driving, the defendant's blood-alcohol level can be established without introducing the blood sample. *Hayes v. State*, 397 P.2d 524 (Okla.Crim.App.1964); *Yarbrough v. State*, 384 S.W.2d 705 (Tex.Crim. App.1964).

■ In the case at bar, the warden measured each lobster twice, repeatedly offered an opportunity to measure the lobsters, and then released them into the ocean. His testimony was sufficient to form the basis for conviction. Had they elected to measure the lobsters themselves, the defendants would have been in a position to call to the warden's attention any mistakes in measurement he may have made. They would also have been able to testify at trial, had they chosen to, regarding the length of the lobsters.

There is no evidence that the State released the lobsters in an effort to deprive the defendants of a fair trial. The release was entirely consistent with the Legislature's express goal of preserving the supply of marine life "for present and future generations . . .." 12 M.R.S.A. § 3401(5–A).[8] Had some element of bad faith been shown, a different case would be presented.

We have reviewed the presiding Justice's other evidentiary rulings and find no merit in defendants' complaints.

### III. Possession within the Meaning of the Statute

■ The defendants assert that the evidence is insufficient to establish possession on the part of both defendants. The statute in question, 12 M.R.S.A. § 4451, makes it unlawful to "have in possession" a short lobster. The sole defense, provided in subsection 3 of the statute, contemplates the immediate release of all short lobsters. Thus, under the statute, the State need only prove that a short lobster came into the defendants' possession and was not immediately liberated. *See State v. Morton*, 125 Me. 9, 130 A. 352 (1925); *State v. Chadwick*, 118 Me. 233, 109 A. 372 (1919). In this case, the defendants together lugged the containers of short lobsters from the beach to a van situated in a parking lot. The evidence of their joint possession of the lobsters was more than sufficient. Accordingly, the presiding Justice was correct in ordering each defendant to pay the statutory fine.[9]

### IV. The Validity of the Fines

■ The defendants argue that the penalties imposed by the presiding Justice under the authority of 12 M.R.S.A. § 4451 were invalid in that they exceed the limits applicable to Class E crimes fixed by 17–A M.R.S.A. § 1301(1)(C). We find that section to have been inapplicable at the time in question.

The new Maine Criminal Code (with certain exceptions) became effective in May of 1976. 17–A M.R.S.A. § 1(2).[10] Then, as now, 17–A M.R.S.A. § 4–A[11] provided that

---

**8.** The constitutional validity of this goal was expressly recognized in *Massey v. Apollonio*, 387 F.Supp. 373, 376 (D.Me.1974) (three-judge court).

**9.** The defendants' argument, based on *Boutelle v. Nourse*, 4 Mass. 431 (1808), that the State is entitled to recover only one fine and not two might have had merit at early American common law in a statutory civil qui tam proceeding. The language of the statute in question, however, clearly contemplates a separate fine for each individual found to be in possession— joint or otherwise—of short lobsters. Each

defendant is therefore liable to the full extent of his own fine.

**10.** Section 1(2) of 17–A M.R.S.A. provides in pertinent part:

Except as provided in section 4–A, this code shall become effective May 1, 1976, and it shall apply only to crimes committed subsequent to its effective date.

**11.** Section 4–A of 17–A M.R.S.A. currently provides as follows:

Crimes and civil violations outside the code
1. This section shall become effective as follows:

with regard to crimes specified under 17–A M.R.S.A. § 1(2), the crime classifications provided in 17–A M.R.S.A. § 4–A(3) would be applicable as of May 1, 1976. Section 1(2) of 17–A M.R.S.A. refers only to "crimes repealed by this code." Since 12 M.R.S.A. § 4451 was not repealed upon the enactment of the new criminal code, we must consult 17–A M.R.S.A. § 4–A(1)(B). At the time of the offense alleged in the case at bar, September 17, 1977, that subsection provided that "[f]or all other purposes," that is, for the purposes of construing those statutes not repealed by the enactment of Title 17–A, "this section shall become effective 90 days after the adjournment of the First Regular Session of the 108th Legislature." 1977 Me. Acts c. 564, § 84. The Legislature adjourned on July 23, 1977, and accordingly 17–A M.R.S.A. § 4–A(1)(B) became effective October 24, 1977. Thus, at the time of the apprehension of the defendants, the crime classifications provided in 17–A M.R.S.A. § 4–A and referred to in 17–A M.R.S.A. § 1301 were not applicable to 12 M.R.S.A. § 4451. That being the case, the presiding Justice correctly followed 12 M.R.S.A. § 4451(1)(A) in arriving at the amount of the fines.

■ Finally, the defendants assert that they are indigent, that they will be unable to pay the fines assessed, and that they face incarceration as a consequence of their inability to pay the fines. This is said to constitute a violation of the Equal Protection Clause of the United States Constitu-

tion, as construed in *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), and *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). We find the question controlled by our recent opinion in *State v. Briggs*, Me., 388 A.2d 507 (1978). The defendants' claim is premature as there has been no finding of an actual inability to pay, nor is there any indication of what action will be taken by the Superior Court in the event that the fines are not paid.

The entry is:

Appeal denied.

Judgments affirmed.

A. For the sole purpose of determining the sentencing authority of the court under section 1, subsection 2, of the code, subsection 3 of this section shall become effective May 1, 1976; and

B. For all other purposes, this section shall become effective 90 days after the adjournment of the First Regular Session of the 108th Legislature.

2. Statutes defining crimes which are outside the code are classified as civil violations or as Class A, Class B, Class C, Class D or Class E crime[s] according to the provisions of subsections 3 and 4.

3. In statutes defining crimes which are outside this code and which are not expressly designated as Class A, Class B, Class C, Class D or Class E crimes, the class depends upon the imprisonment penalty that is provided as

follows. If the maximum period authorized by the statute defining the crime:

A. Exceeds 10 years, the crime is a Class A crime;

B. Exceeds 5 years, but does not exceed 10 years, the crime is a Class B crime;

C. Exceeds 3 years, but does not exceed 5 years, the crime is a Class C crime;

D. Exceeds one year, but does not exceed 3 years, the crime is a Class D crime; and

E. Does not exceed one year, the crime is a Class E crime.

4. If a criminal statute or criminal ordinance outside this code prohibits defined conduct but does not provide an imprisonment penalty, it is hereby declared to be a civil violation, enforceable in accordance with the provisions of section 4, subsection 3.