STATE of Maine

v.

Richard THORNTON.

Supreme Judicial Court of Maine.

Argued Sept. 22, 1982.

Decided Dec. 6, 1982.

David W. Crook (orally), Dist. Atty. (orally), John Alsop, Asst. Dist. Atty., Skowhegan, Edward Morin, Law Student, for plaintiff.

Doyle, Fuller & Nelson, Donna Zeegers (orally), Augusta, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

The defendant was charged with unlawfully furnishing scheduled drugs in violation of 17–A M.R.S.A. § 1106 (1981). The defendant filed a motion to suppress the observations made and the items seized at the defendant's property by the police. After a suppression hearing in Superior Court (Somerset County), the justice granted the defendant's motion. The State appeals, pursuant to 15 M.R.S.A. § 2115–A (Supp. 1979) and Rule 37B, M.R.Crim.P., the suppression order. We deny the appeal.

An unidentified informant contacted Hartland Constable Arnold Hartford. The informant stated that he had been in a wooded area off the Davis Corner Road and had seen what he thought was marijuana growing in back of a mobile home in the area. Hartford contacted State Trooper

Crandall. Both officers talked to the informant, who did not want to be involved in any prosecutorial activity and who did not know who owned the property on which the marijuana was growing.

On July 31, 1981, Trooper Crandall and Constable Hartford left the Davis Corner Road and walked across the property[1] between the mobile home and an adjacent house until they reached an overgrown woods road, used only as a footpath. The men continued up the woods road and found marijuana growing in two clearings fenced in with chicken wire. This entire area was heavily wooded, except for the two clearings for the marijuana patches; it was not possible to see the patches from the defendant's house, from his driveway, from the public road, or from neighboring land. In fact, a person would have had to search to find the way to the patches.

An old stone wall, an old barbed wire fence and No Trespassing signs exist around the perimeter of the defendant's property, including a sign where the woods road enters the defendant's property. It was, however, possible to enter the defendant's property without observing anything except the stone wall. The defendant did not let people walk routinely through his property and the officers had no consent to enter the property on July 31, 1981. Although Trooper Crandall did not observe any boundaries or signs indicating the limits of the defendant's property, Trooper Crandall "figured" the marijuana was growing on the defendant's property because Crandall had observed marijuana on defendant's property in 1980.

After determining that the plants were marijuana, the officers left the property. Trooper Crandall checked maps at the Town Office to "find out for sure" who owned the property on which the plants were growing. On August 3, 1981, Trooper Crandall filed an affidavit and obtained a warrant to search the defendant's property

for marijuana. Trooper Crandall based his belief of probable cause to search on his 1980 observations of marijuana on the defendant's property, on the July 31, 1981 observations, and on the information supplied by a "reliable, cooperating citizen." When asked by the suppression court justice why a warrant had not been procured before the July 3, 1981 visit to the property, Trooper Crandall replied: "I didn't know exactly where the marijuana was. I didn't know whose property it was on, and I didn't feel without checking it that I had enough information." Later, on August 3, 1981, the officers returned to the clearings on the defendant's property and seized the marijuana.

In his order, the suppression court justice found that because the District Attorney had abandoned any effort to prove probable cause for the warrant based on the informant's testimony, sufficient probable cause for a valid warrant depended on Crandall's observations. The justice further found that because the District Attorney had conceded that Crandall's July 31 visit was a warrantless search, the central issue in the motion to suppress determination was whether the July 31 search came within an exception to the warrant requirement.

The suppression court justice concluded that the two officers had entered the defendant's property, which was posted with a number of signs prohibiting trespassing and hunting, by walking part way along the defendant's property and then crossing a stone wall, which was in a state of disrepair. The officers entered the property without license in order to corroborate the informant's tip. The secluded location, chosen by the defendant for the patches, and the defendant's efforts to exclude the public from his property evidenced the defendant's reasonable expectation of privacy on his property. Because the officers were not innocently on public property, property of unknown ownership, or neighboring proper-

---

1. At the hearing, defense counsel tried to elicit testimony from both Crandall and Hartford that they had told counsel during telephone conversations that they had walked up the defendant's driveway to approach the patches. Crandall denied making that statement; Hartford initially did not remember but later denied making the statement.

ty, and because no other exception[2] to the warrant requirement was applicable, the justice found that the officers' July 31 visit to the defendant's property was an unlawful search. After finding that the information obtained in Crandall's 1980 search was stale in 1981 and may also have been obtained during an unlawful search and that the observations made during the July 31 unlawful search could not supply probable cause, the justice ruled that the warrant issued for the August 3 search and seizure was invalid. He, therefore, suppressed evidence of observations made and items seized on the defendant's property on August 3.

On appeal, the State contends: (1) three of the suppression court justice's findings of fact are clearly erroneous; (2) the defendant could have had no reasonable expectation of privacy; and (3) the suppression justice erred in questioning and failing to apply the "open fields" doctrine. We disagree.

### I. Findings of Fact

■ The State challenges as clearly erroneous three findings of fact by the suppression justice. Findings of fact supporting a suppression order by a Superior Court justice will not be set aside unless clearly erroneous. *State v. Dunlap,* 395 A.2d 821 (Me.1978). The justice found that the defendant's property was posted with signs prohibiting trespassing and hunting. The defendant's wife testified directly to the fact that such signs were posted on the defendant's property. The defense also offered in evidence a photograph of a No Trespassing sign on the defendant's property.

■ Second, the justice found that the two officers went partly up the defendant's driveway en route to the marijuana patches during the July 31 visit. In fact, the officers denied using that driveway. Evidence was introduced that they had used some driveway. The suppression justice was not compelled to accept the officers' testimony on the point, even if it was uncontradicted. *Qualey v. Fulton,* 422 A.2d 773, 775 (Me. 1980). The suppression court's finding, even if erroneous, was, however, harmless error. *State v. True,* 438 A.2d 460, 467 (Me.1981) (preserved error harmless if "appellate court believes it highly probable that the error did not affect the judgment"); M.R.Crim.P., Rule 52(a). Even absent this finding, there was sufficient evidence to support the justice's conclusions that the officers were not properly on property open to the public, were not on property of unknown ownership, and were not lawfully on neighboring property. This evidence included the findings that the property was posted and surrounded by a wall; that Crandall "figured" the marijuana was on the defendant's property; that Crandall had seen marijuana on the defendant's property in 1980; that Crandall wanted to check the property in order to get more information for the warrant; and that the marijuana patches could not be seen from neighboring land.

Third, the justice found that the two officers crossed a stone wall in disrepair when entering the defendant's property. The defendant's wife testified that although the stone wall was dilapidated, a person would know he was going over a wall when entering the property in the area where the officers entered the property.

2. The burden was on the state to prove an exception to the warrant requirement. *State v. Linscott,* 416 A.2d 255, 259 (Me.1980); *State v. Dunlap,* 395 A.2d 821, 824 (Me.1978).

The five basic exceptions include: consent, *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); incident to a lawful arrest, *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); probable cause and exigent circumstances, *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); hot pursuit, *Warden v.*

*Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); and stop and frisk, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The "plain view doctrine" is not an exception to the warrant requirement. Rather, this doctrine allows the police to seize evidence in plain view, inadvertently observed by the police while lawfully searching with respect to another crime or purpose. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, *reh'g denied,* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971).

Trooper Crandall's testimony that he did not see any fences or boundaries did not compel rejection by the suppression justice of the testimony of the defendant's wife. The finding of the justice was not clearly erroneous. *State v. McKenzie,* 161 Me. 123, 134–35, 210 A.2d 24, 31 (1965) (clearly erroneous test is that " 'due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses' ").

## II. *Reasonable Expectation of Privacy*

The suppression court justice found that the defendant's effort to conceal the patches and to exclude the public from his land evidenced a reasonable expectation of privacy. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The officers' warrantless search was, therefore, an unreasonable invasion of the defendant's privacy. *State v. Blais,* 416 A.2d 1253, 1256 (Me.1980). This violation of the defendant's fourth amendment rights also tainted the subsequent warrant and search. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

The State relies on *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *State v. Peakes,* 440 A.2d 350 (Me.1982); and *State v. Dow,* 392 A.2d 532 (Me.1978) and argues that the defendant could not have a reasonable expectation of privacy in an area accessible to the public because fourth amendment protection does not extend to "open fields" and similar areas. The State concludes, therefore, that there was no search by the officers on July 31,[3] *Peakes,* 440 A.2d at 353; that they observed only what was "open and patent," *State v. Poulin,* 268 A.2d 475, 480 (Me.1970), and that these observations provided the basis for a valid search warrant used on August 3.

The State misconstrues these cases. In *Katz,* the Court made clear that the fourth amendment protection against unreasonable searches and seizures is a function of an individual's expectation concerning his activities and the reasonableness of those expectations: "the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection ... [b]ut what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582; *State v. Sweatt,* 427 A.2d 940, 946 (Me. 1981).

In his concurrence in *Katz,* Justice Harlan recognized that the majority's seeming personalization of the fourth amendment was not inconsistent with the prior cases. Citing *Hester,* Justice Harlan reasoned that activities conducted in the open are not protected because even if there was an expectation of privacy, the expectation would be unreasonable. 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588 (Harlan, J., concurring).

The Maine cases are in accord. We noted after *Katz* that

[t]he issue of whether government action does or does not constitute a search is now understood to depend less upon the designation of an area ... than upon a determination of whether the examination is a violation of privacy on which the individual justifiably relied as secure from invasion.

*State v. Gallant,* 308 A.2d 274, 278 (Me. 1973) (radiographic scanning by customs of official mail entering country not search); *see United States v. Miller,* 589 F.2d 1117, 1125 (1st Cir.1978), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979) (no rea-

---

**3.** In his order, the suppression court justice stated that the District Attorney had conceded that the July 31 visit was a warrantless search and that the only issue was whether an exception to the warrant requirement applied. Although the State disputes this finding, the following exchange indicates either a concession on, or a waiver of, the issue of the occurrence of a search:

[Defense counsel]: Your Honor, the affidavit of the police officer states that he went into the property and saw the marijuana, and then got a search warrant, it is fairly clear.
[Prosecutor]: There is no question but what that happened.
The Court: You have the burden of going forward, in that event, [Prosecutor].
[Prosecutor]: Yes, Your Honor.

sonable expectation of privacy because boat, like automobile, carries lesser expectation of privacy than home or office); *United States v. Taylor,* 515 F.Supp. 1321, 1326 (D.Me.1981) (no reasonable expectation of privacy in film delivered to commercial establishment for developing); *United States v. Hensel,* 509 F.Supp. 1376, 1385 n. 11 (D.Me. 1981) (no reasonable expectation of privacy in Maine beach; "open fields" exception applies); *United States v. Balsamo,* 468 F.Supp. 1363, 1378 (D.Me.1979) (standing to contest a search depends on defendant's legitimate and reasonable expectation of privacy); *Peakes,* 440 A.2d at 352–53 (officer's observation of defendant's marijuana from neighbor's land not search); *State v. Sapiel,* 432 A.2d 1262, 1266 (Me.1981) (officer's proper entry on premises not violation of justifiable property interest; observation of evidence in plain view not search); *State v. Rand,* 430 A.2d 808, 818 (Me.1981) (absent exigent circumstances, fact that police are conducting official investigation does not justify intrusion on private property in breach of reasonable expectation of privacy); *Sweatt,* 427 A.2d at 945 (legitimate expectation of privacy in safe and contents; secrecy is not requisite for legitimate expectation of privacy); *State v. Albert,* 426 A.2d 1370, 1373 (Me.1981) (any conceivable expectation of privacy with respect to car had ceased when police searched three weeks after car had left defendant's possession and control); *Blais,* 416 A.2d at 1256 (no search warrant required if State establishes absence of any reasonable expectation of privacy); *State v. Johnson,* 413 A.2d 931, 933 (Me.1980) (knowledge of dead body on premises created exigent circumstances permitting warrantless entry); *State v. Littlefield,* 408 A.2d 695, 697 (Me.1979) (no search when defendant observed walking along public street); *State v. Barclay,* 398 A.2d 794, 798 (Me.1979) (necessary difference between search of store or dwelling house and search of ship, boat, wagon or car); *State v. Dow,* 392 A.2d 532, 535 (Me.1978) ("[o]pen, obvious and notorious criminal activity conducted in a public place has never been accorded constitutional protection under the fourth amendment"; warden's observations

of short lobsters open to public view not search); *State v. Cowperthwaite,* 354 A.2d 173, 175–76 (Me.1976) (observation of shotgun, cartridge, and hunting knife by officer standing at open door of vehicle not search); *State v. Hamm,* 348 A.2d 268, 272 (Me.1975) ("[t]he Court in *Katz* broadened the scope of fourth amendment protection to include those areas which the individual attempts 'to preserve as private' "); *State v. Crider,* 341 A.2d 1, 4 (Me.1975) (no invasion of privacy when police enter without force common hallway of multiple-unit dwelling in furtherance of investigation); *State v. Koucoules,* 343 A.2d 860, 868 (Me. 1974) (search exceeding bounds of consent to search becomes invasion of privacy rendering search unreasonable); *State v. Richards,* 296 A.2d 129, 134 (Me.1972) (governmental rummaging about in citizen's belongings, even without purpose of seeking criminal violations, is search); *State v. Stone,* 294 A.2d 683, 688–89 (Me.1972) (rifle on back seat of automobile was knowingly exposed to public view; observation not unconstitutional intrusion into protected area); *Poulin,* 268 A.2d at 480 (observation of safe in open automobile trunk not search); *McKenzie,* 161 Me. at 137, 210 A.2d at 32 (not search to observe that which is open and patent).

■ Depending on the circumstances and the conduct of the individuals, it is entirely possible to have a reasonable expectation of privacy in a public phone booth, *Katz,* 389 U.S. at 348, 88 S.Ct. at 509, 19 L.Ed.2d at 580, and an unreasonable expectation of privacy at home. *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), *reh'g denied,* 386 U.S. 939, 87 S.Ct. 951, 17 L.Ed.2d 811 (1967). In the present case, the defendant's conduct evidenced a clear expectation of privacy. He chose a spot for the marijuana patches that was observable only from his land; he posted No Trespassing and No Hunting signs on his land; he generally excluded the public from his land.

It has never been the law in this State that any expectation of privacy for activity conducted in an area accessible to the public

is *per se* unreasonable. Rather, the proper inquiry must be

> [h]aving in mind the purposes to be served by the Fourth Amendment, made applicable to the states by the Fourteenth, should we not disregard such conclusory property law concept and determine the reasonableness of the police entry by responding to the following relevant inquiry, what under all the existing circumstances, if anything, wholly defeated or partially reduced under the law the reasonable expectations of privacy which the occupants ... had a right to entertain?

*Crider,* 341 A.2d at 5. Under the circumstances of this case, we find nothing that can be taken to have wholly defeated or partially reduced the defendant's reasonable expectation of privacy except the visit by the officers to the property for the specific and admitted purpose of gathering information for a subsequently procured search warrant.

### III. *The "Open Fields" Doctrine*

The State contends, finally, that (1) the suppression court justice clearly erred in applying the "*Katz* expectation of privacy analysis" to this case because the case is governed by the " 'open fields' doctrine analysis developed in Hester ..."; and (2) the justice clearly erred in questioning the viability of the doctrine of *Hester,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898. In his order, the justice did observe, parenthetically, that "[t]he extent to which the open fields doctrine is still viable after *Katz* ... is open to considerable doubt." This observation was preceded, however, by the finding that neither "the plain view or open fields exception to the warrant requirement is applicable."

We have recently noted that after *Katz,* the "*Hester* doctrine remains entirely intact" in Maine and elsewhere. *Dow,* 392 A.2d at 536. Regardless of his estimations of the doctrine's viability, the suppression justice applied the law of the State and found inapplicable the "open fields" exception to the warrant requirement. His conclusion concerning the availability of this exception under these circumstances was correct.

■ In Maine, for the "open fields" doctrine to apply, two factual aspects of the circumstances must be considered: (1) the openness with which the activity is pursued, *Peakes,* 440 A.2d at 353 ("the officers observed something which was 'open and patent' to the Defendant's neighbors and their invitees"); *Dow,* 392 A.2d at 535 (open, obvious criminal activity conducted in public place not constitutionally protected); and (2) the lawfulness of the officers' presence during their observations of what is open and patent. *Dow,* 392 A.2d at 535 ("[t]he warden, who apparently had as much right to be in the parking lot as the defendants, merely observed that which was completely open to public view ..."); *Peakes,* 440 A.2d at 353 ("the Waldoboro officers had permission to be where they were when they saw the marijuana plants"); *Stone,* 294 A.2d at 689 ("without any unlawful initial intrusion into the interior of the automobile, Trooper Smith saw, as knowingly exposed to public view (even though inside the automobile) a 30 calibre carbine rifle ...").

■ Although an activity may be observed, because, for example, it is conducted outside, the participants may still have, as in this case, an expectation of privacy. *Katz,* 389 U.S. at 351–52, 88 S.Ct. at 511, 19 L.Ed.2d at 582. Under such circumstances, the State must demonstrate the legitimacy of the officers' position of observation and the openness of the conduct in order to prove that the expectation of privacy is not objectively reasonable and that, therefore, police observations do not constitute a search. In the circumstances of this case, the State can demonstrate neither requirement for the application of the open fields doctrine. The defendant made every effort to conceal his activity; nothing about his enterprise was open, patent, or knowingly exposed to the public. Secondly, the officers were never legitimately on the defendant's property; they entered the defendant's land without a warrant, and within no

exception to the warrant requirement, for the specific purpose of verifying information to be used, ultimately, against him.

Further, we note that the State's erroneous assumption that the fact that the scene of the criminal activity occurred in an area akin to an "open field" precludes the need for further fourth amendment analysis. The determination of a lawful search and seizure under fourth amendment analysis does *not* involve plugging in one of several mutually exclusive theories or doctrines, such as the "open fields" doctrine, depending on the particular facts. Surely a determination of fourth amendment protection involves a more cohesive and reasoned approach.

Although separated by forty-three years, the *Hester* doctrine and the *Katz* doctrine can be reconciled; indeed, such reconciliation is required. *Dow,* 392 A.2d at 536; *State v. Brady,* 379 So.2d 1294, 1295 (Fla. 1980) ("*Katz* did not rule out the open fields of *Hester* altogether"). Under both analyses, the reasonableness of any subjective expectation of privacy would be questioned: "the question of the reasonable right of privacy may well still depend in part on whether the field is truly open or whether it is fenced with the obvious purpose of keeping people out." *Brady,* 379 So.2d at 1295. There is little doubt that the *Katz* majority would have agreed that Hester had no reasonable expectation of privacy in distributing moonshine whiskey in an open field on his father's land. *Katz,* 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588 (Harlan, J., concurring).

The point is not that the area of the marijuana patches was accessible to the public, *Katz,* 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588 (Harlan, J., concurring), or that, under different circumstances, the defendant's land might have been open woods. The dispositive point is that by his actions the defendant indicated that he expected his land to be a private place. Under these facts, we think that that expectation was reasonable. Trooper Crandall "figured" the marijuana was on the defendant's land. The two officers walked directly to the chicken-wire enclosures; it was not possible to observe the patches except from such close proximity. The officers were "checking" the property, without permission or authority, to ensure "enough information." This conduct was a search; the State has not proved the reasonableness of this search. *Linscott,* 416 A.2d at 259. An unreasonable search, under every doctrine and theory, is proscribed by the fourth amendment.

The entry is:

Judgment affirmed.

All concurring.