**STATE of Maine**

v.

**Wellington Clough TOPPAN.**

Supreme Judicial Court of Maine.

Argued Nov. 14, 1980.
Decided March 2, 1981.

 

David W. Crook, Dist. Atty., Paul D. Mathews, Deputy Dist. Atty., (orally), Augusta, for plaintiff.

Berman, Berman & Simmons, P.A., Jack H. Simmons, (orally), Lewiston, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN and ROBERTS, JJ.

GODFREY, Justice.

Clough Toppan appeals from a judgment of the Superior Court convicting him, after a jury-waived trial, of unlawful furnishing of a schedule Z drug, marijuana, 17–A M.R.S.A. §§ 1102, 1106 (Supp.1980). The single issue on this appeal concerns the proper construction of the word "furnishing" as used in section 1106. We affirm the judgment.

From the evidence, the trial justice would have been warranted in finding that the facts were as follows: Having used marijuana since 1971, Toppan became concerned about hazardous chemicals sometimes present in marijuana purchased from dealers and decided to grow marijuana in a vegetable garden located at his residence on land owned in joint tenancy with his wife. With the help of two friends, Toppan planted the garden in the spring of 1979. In addition to marijuana, various vegetables were to be cultivated, and Toppan's two friends were to contribute money, seeds, and labor to the planting and care of the garden. Toppan and his two friends were to share in the harvest.

On August 31, 1979, a warrant to search Toppan's property for marijuana was issued. The search led to the seizure of approximately twenty-one pounds and two ounces of wet marijuana. Toppan was then indicated for unlawful trafficking in a scheduled drug, 17–A M.R.S.A. § 1103 (Supp.1980), and unlawfully furnishing

scheduled drugs, 17–A M.R.S.A. § 1106 (Supp.1980).[1]

Toppan was tried on April 18, 1980. At the close of the state's case, the court granted the defendant's motion for a judgment of acquittal on the trafficking charge,[2] but denied the motion with respect to the furnishing charge. The court also ruled that the state could rely on subsection 3 of section 1106, the provisions of which create a presumption that a person is unlawfully furnishing a scheduled drug "if he intentionally or knowingly possesses more than 1½ ounces of marijuana."

The defendant's case consisted of extensive testimony by Toppan tending to show that the marijuana garden was a joint enterprise, the product of which was to be enjoyed solely by Toppan and his two friends. The defendant further testified that during the summer of 1979 he harvested some marijuana which was divided among the three of them. After the defendant testified, the trial justice stated that he considered the described sharing arrangements immaterial to criminal liability under section 1106. In response to the court's opinion, the defense rested. Finding the defendant guilty under section 1106 of unlawfully furnishing marijuana, the justice stated explicitly that he did not rest his judgment on the presumption in § 1106(3), but on Toppan's own testimony about harvesting some of the marijuana and dividing it with his two friends.

Marijuana is classified as a class Z drug pursuant to the schedule set forth in 17–A M.R.S.A. § 1102(4)(B). Under section 1106(1), furnishing marijuana, if intentional or knowing, is a Class D crime. 17–A M.R.S.A. § 1106 (Supp.1980). Subsection 18 of 17–A M.R.S.A. § 1101 defines the statutory term "furnish" as follows:

18. "Furnish:"

A. To furnish, give, dispense, administer, prescribe, deliver or otherwise transfer to another;

B. To possess with the intent to do any act mentioned in paragraph A.

The appellant contends that his conduct cannot be considered "furnishing" under § 1106 because he has not transferred marijuana to anyone but has merely shared a marijuana crop with his two friends who, by agreement, contributed to the planting and cultivation of the crop with the intention of sharing the crop for personal use. The marijuana was not to be used by anyone outside the group. In short, appellant argues that a "furnishing" has not occurred because all participants were joint possessors, and the Legislature meant to exempt possession for personal use from criminal penalties. See 22 M.R.S.A. § 2383 (Supp. 1965–1979).[3]

■■ The appellant contends that a "furnishing" within the meaning of the code could not have occurred because, under

---

1. Section 1106 provides as follows:

1. A person is guilty of unlawfully furnishing scheduled drugs if he intentionally or knowingly furnishes what he knows or believes to be a scheduled drug, and which is, in fact, a scheduled drug, unless the conduct which constitutes such furnishing is either:
A. Expressly authorized by Title 22; or
B. Expressly made a civil violation by Title 22.
2. Violation of this section is:
A. A Class C crime if the drug is a schedule W drug; or
B. A Class D crime if the drug is a schedule X, Y or Z drug.

3. A person shall be presumed to be unlawfully furnishing a scheduled drug if he intentionally or knowingly possesses more than 1½ ounces of marijuana.

2. The court concluded that the state, having failed to introduce direct evidence of intent to "traffick," could not rely on the presumption from possession set forth in section 1103(3) because to do so would render meaningless the exception of growing or cultivating marijuana from the definition of "traffick" in 17 A M.R.S.A. § 1101(17)(B) (Supp.1980).

their agreement, he and his friends shared possession of the marijuana crop from the outset, so that no "transfer to another" took place within the meaning of section 1101(18)(A). We disagree with appellant's contention, both on the technical ground that the agreement did not have the legal effect he ascribes to it and, more directly, on the ground that the purposes of the various Maine statutes regulating marijuana would be frustrated in part if arrangements of the sort here involved were held to result in no transfer.

Toppan relies on the initial sharing agreement as the basis for his theory that he and his two friends shared ownership and possession of the marijuana from the time of planting. However, that agreement was illegal. Though possession of a usable amount of marijuana is only a civil violation under 22 M.R.S.A. § 2383 (Supp.1965–79), marijuana remains nonetheless a scheduled drug and is contraband subject to seizure and confiscation by the state.[4] Its sale or other transfer is subject to criminal penalties, and possession of more than specified amounts creates presumptions of illegal sale or other transfer.[5] In view of the condemnation of marijuana expressed by the pertinent legislation, an agreement to grow marijuana and share the product must be held illegal in this state.

Since the agreement was illegal, it created no rights of ownership or possession in the parties to it. *See Thacher Hotel, Inc. v.*

*Economos,* 160 Me. 22, 197 A.2d 59 (1964); *Hinckley v. Giberson,* 129 Me. 308, 151 A. 542 (1930). Toppan and his friends acquired from the agreement no legally enforceable rights with respect to the crop. Toppan stated at trial that it was his intention that when the marijuana was harvested his friends were to receive, or keep, a part of the harvest. Before the crop was harvested, however, Toppan had practical control over the marijuana by virtue of his joint ownership and possession of the farm with his wife. At the moment he and his friends actually divided some of the harvested crop and each took possession of his individual share, there was a transfer of factual control amounting to a direct "furnishing" within the definition of that term in subsection 18(A) of section 1101. Toppan's own testimony left no doubt that the "furnishing" was intentional. The trial justice was correct in finding him guilty under the provisions of section 1106 and in doing so without any resort to the presumption from possession set forth in subsection 3 of that section.

Besides having no technical basis in property or contract law, appellant's position cannot be reconciled with the legislative scheme for the ordering of sanctions relating to the use and "furnishing" of marijuana. The Legislature has decided that mere possession of a usable amount of marijuana is not an evil serious enough to warrant a criminal sanction. Accordingly, mere possession of a usable amount is characterized

---

**3.** Section 2383 provides:
  Possession of a usable amount of marijuana is a civil violation for which a forfeiture of not more than $200 may be adjudged.

**4.** 17 A M.R.S.A. § 1114 provides as follows:
  All scheduled Z drugs, the unauthorized possession of which constitutes a civil violation under Title 22, are hereby declared contraband, and may be seized and confiscated by the State.
  Marijuana is a schedule Z drug, and possession of a usable amount of it constitutes a civil violation under section 2383 of title 22. Hence it comes within the provision of section 1114

and is contraband. *Cf. State v. Bishop,* Me., 392 A.2d 20, 26 (1978) (prison contraband under 17 A M.R.S.A. § 756).
  It would be absurd to construe section 1114 as extending only to the "usable amount" of marijuana referred to. The words "the unauthorized possession of which constitutes a civil violation under Title 22," are obviously intended to identify the particular *kinds* of schedule Z drugs that are to be declared contraband, even though possession of usable amounts of them may not be criminal.

**5.** 17 A M.R.S.A. §§ 1103, 1106.

and treated as only a civil violation under 22 M.R.S.A. § 2383. However, intentionally supplying marijuana to others, with or without consideration, is a criminal offense under sections 1103 and 1106 of the code.

In arguing that a furnishing or transfer has not occurred in the instant case, the appellant is asking this Court to treat his conduct and that of his two friends as the type of small-scale personal use and possession that the Legislature has decided to exclude from criminal penalties.[6] To accept the appellant's characterization would ignore the purpose of section 1106 in the criminal code. Generally speaking, section 1103 curbs the spread of marijuana use by penalizing its sale, while section 1106 is intended to curb the spread of marijuana use arising in the context of more informal social encounters. On the other hand, the treatment of possession of a usable amount as a civil violation is intended only to discourage the personal use of a putatively undesirable drug.

Considered in terms of the basic purpose of section 1106, the word "furnish" in that section must be deemed to cover appellant's conduct. Where three persons pool their resources and labor for the purpose of cultivating, harvesting, and ultimately using marijuana, the legislative purpose underlying § 1106 is clearly involved. Each participant, by his efforts, has contributed to an enterprise from which each has gained access to, and the use of, a substance the Legislature has decided to regulate. The appellant's conduct thus involves more than a question of the individual use of a scheduled drug: by contributing land and labor to the project, he has intentionally facilitated the use of marijuana by others as effectively as if he had raised the marijuana alone and given his friends some of it without any prior understandings.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.

---

**6.** In support of this characterization, appellant cites *United States v. Swiderski*, 548 F.2d 445 (2d Cir. 1977). In *Swiderski*, the appellants, Swiderski and his fiancee, purchased 4.1 grams of cocaine together at an apartment, left the apartment together in a van, and were apprehended together shortly thereafter by federal drug enforcement agents. The error on which the appellants rested their appeal was the trial judge's jury instruction that transfer of the drug between the two appellants could constitute a distribution under 21 U.S.C. § 841(a). The Second Circuit held that joint purchasers and possessors of a controlled drug (cocaine), who intended to share it between themselves as users, were not guilty of felonious possession "with intent to distribute" under 21 U.S.C. § 841(a), as distinguished from simple possession, a misdemeanor under 21 U.S.C. § 844(a).

*Swiderski* is distinguishable from the instant case for several reasons, among them that Toppan has not merely used the prohibited drug but has participated in a joint venture to produce quantities of the drug for use by persons other than himself. The Ninth Circuit has held that *Swiderski* should be limited to its facts. *United States v. Wright*, 593 F.2d 105 (9th Cir. 1979). In cases where an individual's conduct has significantly facilitated the use of prohibited drugs by others, the Ninth Circuit has held that 21 U.S.C. § 841 has been violated. *United States v. Ramirez*, 608 F.2d 1261 (9th Cir. 1979); *United States v. Wright, supra*; *United States v. Branch*, 483 F.2d 955, 956 (9th Cir. 1973).