**STATE of Maine**

v.

**C. Bradford PEAKES.**

Supreme Judicial Court of Maine.

Argued Nov. 6, 1981.

Decided Feb. 2, 1982.

sioner's rejection of Dr. Adams' opinion testimony. *Cf. In re Estate of Bedwell*, 104 Ariz. 443, 445, 454 P.2d 985, 987 (1969).

John R. Atwood, Dist. Atty., Robert B. VanWyck, Asst. Dist. Atty. (orally), Wiscasset, for plaintiff.

Thomas A. Berry (orally), Boothbay Harbor, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ.

NICHOLS, Justice.

The Defendant, G. Bradford Peakes, appeals from his conviction following a jury-

waived trial in Superior Court, Lincoln County, of the crime of trafficking in marijuana. 17–A M.R.S.A. § 1103(1) (Supp. 1980).[1] On this appeal he challenges the observation of marijuana plants growing in his garden as a warrantless and unreasonable search of his property, the sufficiency of the search warrant which resulted from that observation, and the sufficiency of the evidence presented by the State to support his conviction. We deny the appeal and affirm the conviction.

On September 10, 1980, two Waldoboro police officers drove past the Defendant's house on a rural road in that town. They were unable to see the garden behind the house where an informant had told them that marijuana plants were growing. The officers returned with their chief, who had obtained permission from the owner of the adjacent property (one Miller) to enter that property and approach the Defendant's lot from the side. The officers stopped near a stone wall which marked the boundary line between the two lots. From there, they were able to see tall marijuana plants growing in the Defendant's garden.

The officers returned to the police station, where one of them made out an affidavit which was used to apply for a search warrant. After the warrant was issued by a complaint justice, at around 4:30 P.M. the same day, three state police officers, four members of the Waldoboro Police Department, one of whom was the affiant, and a coastal warden served the warrant on the Defendant and searched his house and lot for four to five hours.

The Defendant gave the officers one dried marijuana plant. A pickup truckload of plants was removed from the garden. Several small plastic bags and boxes of what was later chemically determined to be marijuana were taken from the house, along with $2,470 in cash and assorted scales, sifters, drying screens and other paraphernalia.

*Observation of the Garden as a Search*

■ Before trial the Defendant made a motion to suppress the evidence seized during the search. This motion was denied. The Defendant contends that the officers' observation of his garden was a warrantless search and an unreasonable invasion of his expectation of privacy, thus also tainting the subsequent warrant and search. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Because the garden was not visible from the road, the Defendant argues that he had a reasonable expectation of privacy which was violated by the officers' arrival to observe.

The issue of whether government action does or does not constitute a search is now understood to depend less upon the designation of an area . . . than upon a determination of whether the examination is a violation of privacy on which the individual justifiably relied as secure from invasion.

*State v. Gallant*, Me., 308 A.2d 274, 280 (1973). The Defendant correctly notes that his garden was not open or exposed to the public. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). But the Defendant made no attempt to conceal the garden from the view of his neighbors. He cannot be said to have an actual expectation of privacy in the garden under these circumstances. *State v. Hamm*, Me., 348 A.2d 268 (1975). There was no invasion of his property. The officers observed some-

---

**1.** The statute reads in pertinent part:

　1. A person is guilty of unlawful trafficking in a scheduled drug if he intentionally or knowingly traffics in what he knows or believes to be any scheduled drug, and which is, in fact, a scheduled drug . . .

　2. Violation of this section is:

　　*　*　*　*　*　*

　B. A Class C crime if the drug is a schedule X drug or if it is marijuana in a quantity of more than 2 pounds; or

　C. A Class D crime if the drug is a schedule Y or schedule Z drug.

　3. A person shall be presumed to be unlawfully trafficking in scheduled drugs if he intentionally or knowingly possesses more than 2 pounds of marijuana.

Marijuana is a schedule Z drug. 17–A M.R.S.A. § 1102(4)(B) (Supp.1981).

thing which was "open and patent" to the Defendant's neighbors and their invitees. *State v. Poulin,* Me., 268 A.2d 475, 480 (1970).

The Waldoboro officers had permission to be where they were when they saw the marijuana plants. The plants were in plain view. *State v. Cowperthwaite,* Me., 354 A.2d 173 (1976). The trial court did not err in finding that the observation by the officers in this case did not constitute a search.

### The Search Warrant

The Defendant contends that the affidavit offered in application for the search warrant failed to establish probable cause to search his house and that the description in the warrant of the place to be searched is fatally insufficient. The affidavit recites the officers' observation of the marijuana plants in the Defendant's garden, the fact that some unidentified plants had been recently pulled from the garden, and the fact that a path led from the garden to the area of the house and barn.

Probable cause is a factual basis for the magistrate's reasonable belief that a crime has been committed on the premises to be searched. *State v. Thornton,* Me., 414 A.2d 229, 233 (1980). The magistrate is entitled to draw reasonable inferences from the facts in an affidavit. *State v. Appleton,* Me., 297 A.2d 363 (1972). If the affidavit supplies reasonably trustworthy information which would warrant a prudent person to believe that the search would disclose criminal conduct or items that would aid in identifying a criminal or establishing the commission of a crime, the affidavit is sufficient. *State v. Smith,* Me., 379 A.2d 722, 724 (1977). The complaint justice in this case could have reasonable grounds to conclude that evidence of guilt of unlawful possession of contraband was in the Defendant's house. *State v. Hawkins,* Me., 261 A.2d 255 (1970).

The search warrant served on the Defendant described the property to be searched only as "Property of G. Bradford Peakes and Barbara A. Peakes." This description, standing alone, would be insuffi-

cient as a "special designation of the place to be searched" which is required by our state Constitution. Me.Const.Art. I, § 5. However, it has long been settled law in Maine that a search warrant and its supporting affidavit may be read together to supply a particular description of the place to be searched. *State v. Corbin,* Me., 419 A.2d 362 (1980); *State v. Comolli,* 101 Me. 47, 63 A. 326 (1905). The affidavit upon which the search warrant in this case was based described the property as

> The parcel of land located on the westerly side of the Dutch Neck Rd. owned by G. Bradford Peakes and Barbara A. Peakes as described in Book 838, page 255, at the Lincoln County Registry of Deed [sic] and the structures thereon consisting of a house, attached greenhouse and barn.

The affidavit also recounted the officers' observation of the Defendant's garden from the property of a neighbor named Miller.

The trial court noted that the reference in the affidavit to the record in the Registry of Deeds could not be used to provide the necessary particularity because the deed itself was not before the complaint justice or the officers who executed the warrant. Even without that reference, however, the description in the affidavit provides the necessary reasonable certainty required under our previous interpretations of Article I, § 5 of the Maine Constitution and the Fourth Amendment to the United States Constitution. *See, e.g., State v. Brochu,* Me., 237 A.2d 418, 424 (1967); *State v. Sheehan,* 111 Me. 503, 90 A. 120 (1914).

The Defendant established that there are 20 to 25 houses on the Dutch Neck Road in Waldoboro. It is highly unlikely that more than one of them was on the westerly side of that road, was occupied by G. Bradford Peakes, was next to the Miller property, had a barn and a greenhouse, and had marijuana plants growing in its garden. The officer who made the affidavit was one of those executing the search warrant. The officers executing the warrant, to which the affidavit was attached, could "ascertain and identify" the place intended to be searched.

*Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1925).

Therefore, while a sufficient description of the property to be searched in the warrant itself is always preferable, the warrant and affidavit in this case, taken together, provide a description of sufficient particularity to protect the Defendant. Such is the purpose of the constitutional requirement.

### Sufficiency of the Evidence

■ The indictment charged that the Defendant

did intentionally or knowingly traffick in what he knew or believed to be a scheduled drug, namely, marijuana, a schedule Z drug, which was in fact marijuana, a scheduled drug, by then and there intentionally or knowingly possessing more than 2 pounds of marijuana.

Possession of more than two pounds makes this a Class C crime. 17–A M.R.S.A. § 1103(2)(B). The statute provides a presumption of trafficking arising from intentional or knowing possession of more than two pounds of marijuana. 17–A M.R.S.A. § 1103(3).

The Defendant contends that the State presented no evidence that more than two pounds of marijuana was seized inside the house and that the growing marijuana seized outside the house cannot be used to provide that two pounds. In support of this position he cites a footnote in *State v. Toppan*, Me., 425 A.2d 1336 (1981),[2] for the proposition that growing marijuana cannot be used to make up the weight required for conviction of trafficking under section

2. The footnote reads in its entirety:
    The court concluded that the state, having failed to introduce direct evidence of intent to "traffick," could not rely on the presumption from possession set forth in section 1103(3) because to do so would render meaningless the exception of growing or cultivating marijuana from the definition of "traffick" in 17–A M.R.S.A. § 1101(17)(B) (Supp.1980). 425 A.2d at 1338 n.2.

3. *Section 1101* provides in pertinent part:
    As used in this Title, the following words shall, unless the context clearly requires otherwise, have the following meanings:

1103(3) because of the exception of growing marijuana from the definition of "traffick" under 17–A M.R.S.A. § 1101.[3] But *Toppan* only notes, without adopting, the conclusion of that trial court that the presumption from possession could not alone support a conviction under those circumstances.

■ Here the State presented evidence from which the trial court could have inferred intent to traffick without resorting to the presumption provided by section 1103(3). There were packages, jars and boxes of processed marijuana in the house, some of which was found with a large sum of cash. There were scales, drying screens and other processing paraphernalia in the house. Possession of more than two pounds of marijuana is not a necessary element of the crime of trafficking; it is a means by which the crime may be proved.

The indictment charged the Defendant under section 1103, using part of the language of the section 1103(3) presumption. The definition of "traffick" under section 1101, as well as excluding growing or cultivation of marijuana, includes possession of more than two pounds of marijuana with the intent to "sell, barter, trade, exchange or otherwise furnish for consideration." 17–A M.R.S.A. § 1101(17)(D). This definition applies to the Defendant. We need not reach the issue raised by the *Toppan* footnote because the Defendant's conviction does not rest solely upon his possession of more than two pounds of growing marijuana. There is sufficient evidence in the record to allow the trial court to find proof beyond a reasonable doubt of intent to sell,

\* \* \* \* \* \*
17. "Traffick:"
    A. To make, create, manufacture;
    B. To grow or cultivate, except with respect to marihuana;
    C. To sell, barter, trade, exchange or otherwise furnish for consideration; or
    D. To possess with the intent to do any act mentioned in paragraph C, except that possession of 2 pounds or less of marijuana with such intent shall be deemed furnishing.

barter, or exchange for consideration the considerable amount of marijuana, both growing and processed, which was in his possession. *State v. Thornton*, Me., 414 A.2d 229 (1980). Under section 1101(17)(D) that is enough. The State cannot be required to invoke the presumption of section 1103(3) when the evidence which it presents makes reliance upon the presumption unnecessary.

The entry, therefore, will be:

Appeal denied.

Judgment affirmed.

All concurring.