**Sal AVILA, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. A–7145.**

Court of Appeals of Alaska.

March 30, 2001.

Rehearing Denied April 20, 2001.

---

25. *See Cox,* 882 P.2d at 914 (citing *Doyle,* 815 P.2d at 368).

Sharon Barr, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, J.

In the summer of 1997, Sal Avila was an inmate at the Palmer Correctional Center. The state troopers and the Wasilla police ran a "sting" operation in an attempt to catch Avila distributing heroin at the prison. To carry out this scheme, the police enlisted another inmate, Dennis Cash, as a "false friend".

Cash owed Avila $150. Using a story worked out by the police, Cash told Avila that he would pay off this debt in the following way: Cash had a friend named "Rick" on the outside, and Rick owed money to Cash. Cash would put Avila in contact with Rick, and Rick would supply the money to make a $150 purchase of heroin. Rick would deliver this heroin to Avila's girlfriend, Judy Cummins, and then Cummins would bring the heroin to Avila at the Palmer Correctional Center.

"Rick" was, in fact, a police officer. Avila made telephone calls to both Rick and Cummins, trying to arrange the drug transaction described in the previous paragraph, and Rick gave Cummins $150 to purchase drugs.

But Cummins ultimately decided that she would not deliver drugs to a prison. Her decision ended the sting operation before any delivery of heroin took place.

For his part in this episode, Avila was charged with two crimes: attempted second-degree controlled substance misconduct (i.e., attempted possession of heroin for purposes of delivery) and solicitation of second-degree controlled substance misconduct (i.e., asking another person to engage in the delivery of heroin).[1] Following a jury trial, Avila was convicted of both crimes.

Avila was a second felony offender for purposes of presumptive sentencing. For the crime of attempted possession of heroin with intent to deliver, he received a sentence of 10 years' imprisonment with 5 years suspended (5 years to serve). For the crime of soliciting a delivery of heroin, Avila received a sentence of 6 years to serve. One year of the solicitation sentence was made consecutive to the attempt sentence, so Avila's composite term is 11 years' imprisonment with 5 years suspended.

*The evidence at trial was sufficient to support the jury's finding that Avila intended to deliver at least a portion of the heroin to Dennis Cash*

The State charged Avila with attempted second-degree controlled substance misconduct on the theory that Avila, after he received the heroin from Judy Cummins, intended to deliver at least a portion of the drug to Dennis Cash (and possibly other inmates).

One of Avila's theories of defense at trial was that, even assuming that he tried to get Cummins to deliver heroin to him in prison, this heroin was intended solely for Avila's personal use. Under this view of the case, Avila would be guilty of attempted *fourth-degree* controlled substance misconduct—attempted possession of heroin for personal use, rather than attempted possession of heroin for purposes of delivery to others.

At Avila's request, the trial judge instructed the jury on this lesser offense. In their

---

1. AS 11.71.020(a) (defining second-degree controlled substance misconduct); AS 11.31.100(a) (defining "attempt"); AS 11.16.110(2)(A) (imposing vicarious liability for solicitation of a crime).

summations to the jury, the two trial attorneys argued contrasting interpretations of the evidence. Avila's attorney argued that Avila wanted the heroin for his personal use, while the prosecutor argued that Avila intended for at least part of the heroin to be distributed to Cash. The jury resolved this dispute in favor of the State; they rejected the proposed lesser offense and found Avila guilty as charged—i.e., guilty of attempted possession of heroin for purposes of delivery.

On appeal, Avila contends that the State failed to present sufficient evidence to support this verdict. Avila argues that, even when the evidence is viewed in the light most favorable to the jury's decision, no reasonable person could have concluded that the State had proved that Avila intended to deliver at least a portion of the heroin to Cash.

■ We have independently reviewed the record, and we acknowledge that the State's evidence on this issue was relatively weak. Nevertheless, we can not say that it was so weak that no reasonable person could have relied on it. We therefore conclude that the evidence is sufficient to support the conclusion that Avila intended to deliver some portion of the heroin to another person.

Avila argues in the alternative that, even supposing that he intended to share the heroin with Cash, this would not constitute a "delivery" for purposes of the drug laws.

Avila points out that, as far as he knew, Cash was the person who effectively provided the money that was to be used to purchase the heroin. As explained above, Cash owed Avila $150. According to the story that the authorities concocted for Avila, "Rick" owed money to Cash, and Rick was willing to partially discharge his debt to Cash by giving Avila's girlfriend $150 so that she could purchase heroin for Avila. Thus, Avila would

receive $150 worth of heroin, and this would satisfy Cash's debt to him.

Based on this scenario (that is, based on the facts as they appeared to Avila), Avila argues that even if he had intended to give some of the heroin to Cash, this only would have amounted to a sharing between two co-purchasers. Avila further contends that such a sharing would not constitute a "delivery".

Avila's argument is seemingly at odds with our decision in *State v. Burden*[2]. *Burden*, we held that a go-between in a drug transaction is chargeable with "delivery" even though the go-between is the agent of the purchaser.[3] Thus, if Avila had not intended to take any of the heroin himself, but had intended merely to act as a conduit for the delivery of heroin to Cash, Avila would clearly be guilty of attempting to possess the heroin with intent to deliver.

But Avila argues that his participation as a co-purchaser makes his case different. Avila points out that if he had succeeded in having Cummins deliver the heroin to him at the prison, then even if Avila never was able to physically transfer a portion of that heroin to Cash, Cash might still have been chargeable with possession of heroin under a constructive possession theory (because he was Avila's partner in the purchase). Avila argues that if, in the eyes of the law, Cash would be deemed to have received the heroin at the moment that Cummins delivered the drug to Avila, then it makes no sense to say that a second "delivery" and a second act of "possession" would have occurred when Avila later handed Cash's portion of the heroin to him.

There is some case law that arguably supports Avila's position.[4] On the other hand,

2. 948 P.2d 991 (Alaska App.1997).

3. *See id.* at 994.

4. *See United States v. Swiderski*, 548 F.2d 445, 449–452 (2nd Cir.1977); *State v. Carithers*, 490 N.W.2d 620, 622–24 (Minn.1992); *People v. Edwards*, 39 Cal.3d 107, 216 Cal.Rptr. 397, 702 P.2d 555, 561 (1985). *See also United States v. Elliott*, 849 F.2d 886, 890 (4th Cir.1988); *United States v. Palafox*, 764 F.2d 558, 560–63 (9th

Cir.1985) (*en banc*); *State v. Borja–Guzman*, 121 N.M. 401, 912 P.2d 277, 281–83 (App.1996).

*See also United States v. Hernandez*, 591 F.2d 1019, 1022 (5th Cir.1979) (a single sale of a controlled substance will not support separate punishments for distribution and possession with intent to distribute); *United States v. Smith*, 757 F.2d 1161, 1165–66 (11th Cir.1985) (dealing with the related issue of whether two physical deliveries occurring during the same drug transaction—first the delivery of a sample, and then, when the

there are a number of cases that either reject Avila's "co-purchaser" defense or else restrict its scope to situations where the co-purchasers take possession simultaneously or practically simultaneously.[5]

Even though this court solicited supplemental briefing from the parties on this issue, Avila has not cited, much less discussed, any of the cases listed in the footnotes to our previous paragraph. Given the fact that this is a difficult issue of first impression in Alaska, we conclude that Avila has failed to adequately brief the issue, and we therefore decline to resolve the legal merit of Avila's proposed co-purchaser defense.[6]

Finally, Avila argues that the State failed to prove a necessary element of the attempt charge. Under AS 11.31.100(a), the crime of attempt requires proof of "a substantial step toward the commission of [the target] crime". Avila argues that his only actions were telephone calls to "Rick" and to Cummins, and that, even when viewed in the light most favorable to the State, these telephone calls amounted to no more than solicitations to deliver heroin to him.

 But when Avila solicited Cummins to deliver heroin to him in prison, Avila became responsible for any of Cummins's conduct that might constitute a substantial step toward the accomplishment of that crime.[7] Thus, Avila could properly be convicted of attempt if either he or Cummins thereafter performed a substantial step toward the commission of the intended crime.

Our criminal code does not explicitly define the term "substantial step". This lack of a definition was intentional. In their commentary to the draft provision on attempt, the Criminal Code Revision Subcommission declared that "specificity beyond this point would be self-defeating".[8] But the Subcommission stated that it advocated the approach taken by the Model Penal Code: to qualify as a "substantial step", the defendant's act must be "strongly corroborative of the actor's criminal purpose".[9]

The Subcommission also indicated its approval of the Model Penal Code's list of acts "which should not be held insufficient as a matter of law to constitute a substantial step".[10] This list of *prima facie* substantial steps includes conduct which, under former law, might have been deemed merely "preparatory"—for example, "searching for or following the contemplated victim of the crime",

---

sample proved satisfactory to the purchaser, the remainder—will support separate counts); *United States v. Arbelaez*, 812 F.2d 530, 532–33 (9th Cir.1987) (holding that a defendant who supplied a large amount of cocaine to an accomplice, knowing the accomplice would travel to California and sell the drug to various purchasers, could not be separately punished for (1) aiding or abetting the accomplice's possession of cocaine with intent to distribute and (2) aiding or abetting the accomplice's later distribution of cocaine).

See also *United States v. Wilson*, 781 F.2d 1438, 1439–1440 (9th Cir.1986) (a defendant who attempted to manufacture PCP (phencyclidine) could only be punished for a single crime even though, during the manufacturing process, he violated three separate statutes by (1) possessing the chemical "piperidine", knowing it could be used to manufacture PCP; (2) manufacturing PCC, a chemical precursor of PCP and a necessary step in the process, and (3) attempting to manufacture PCP); *United States v. Forester*, 836 F.2d 856, 859–861 (5th Cir.1988) (a defendant who attempted to manufacture methamphetamine could only be punished for a single crime even though the defendant also violated another statute by possessing P2P (phenyl-2–proponone) with intent to manufacture methamphetamine).

**5.** See *United States v. Speer*, 30 F.3d 605, 609 (5th Cir.1994); *United States v. Monzon*, 869 F.2d 338, 347–48 (7th Cir.1989); *United States v. Holmes*, 722 F.2d 37, 41–42 (4th Cir.1983); *United States v. Wright*, 593 F.2d 105, 108 (9th Cir. 1979); *Durham v. United States*, 743 A.2d 196, 201–04 (D.C.App.1999); *State v. Moore*, 529 N.W.2d 264, 266 (Iowa 1995); *Long v. United States*, 623 A.2d 1144, 1148–49 (D.C.App.1993); *Commonwealth v. Johnson*, 413 Mass. 598, 602 N.E.2d 555, 559 (1992); *State v. Toppan*, 425 A.2d 1336, 1340 (Me.1981).

**6.** See *Katmailand, Inc. v. Lake and Peninsula Borough*, 904 P.2d 397, 402 n. 7 (Alaska 1995); *Petersen v. Mutual Life Ins. Co. of New York*, 803 P.2d 406, 410 (Alaska 1990); *Wren v. State*, 577 P.2d 235, 237 n. 2 (Alaska 1978) (a party's failure to offer more than cursory briefing of an issue will be deemed an abandonment of that issue).

**7.** See AS 11.16.110(2)(A).

**8.** Alaska Criminal Code Revision, Tentative Draft, Part 2 (February 1977), p. 73.

**9.** *Id.*

**10.** *Id.*

"reconnoitering the place contemplated for the commission of the crime", and "possession, collection[,] or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection[,] or fabrication serves no lawful purpose of the actor under the circumstances".[11]

In Avila's case, Cummins engaged in conduct which can be analogized to the examples listed in the Subcommission's commentary. Cummins met with "Rick" and obtained the money that was to be used to purchase the heroin. She then went searching for a heroin supplier that she knew, intending to consummate the purchase. (The purchase did not occur because Cummins was unable to find the supplier while she still had all the money.)

Comparing Cummins's acts to the acts listed in the Subcommission's commentary, it appears that a reasonable jury could properly conclude that Cummins's conduct amounted to a "substantial step" toward accomplishing a delivery of heroin to Avila. This conclusion is bolstered by the Alaska Supreme Court's decision in *Braham v. State*, where the court held that a fairly minimal act was sufficient to constitute a "substantial step".[12]

As already explained, once Avila solicited Cummins to deliver heroin to him in prison, he became chargeable with the actions she took toward the accomplishment of this crime. Thus, the jury could properly find that Avila (through Cummins) committed a substantial step toward the commission of Avila's intended crime—possession of heroin for purposes of delivery to a third person (Cash).

For all these reasons, we hold that the evidence was sufficient to support Avila's conviction for attempted possession of heroin with intent to deliver.

*Avila's two convictions (one for attempt, the other for solicitation) must merge*

■ On appeal, Avila argues that his two convictions must merge. The State concedes that Avila is correct. AS 11.31.140(d) authorizes the State to indict a defendant on separate counts of solicitation and attempt when both of these theories of criminal liability arguably apply to the defendant's conduct. However, AS 11.31.140(b) declares that a defendant may be convicted of only one of these inchoate crimes when the charges are based on "conduct designed to ... culminate in [the] commission of the same crime". Based on this statute, the State agrees that, under the facts of this case, Avila should not have received separate convictions for attempt and solicitation.

We conclude that the State's concession of error is well-founded.[13] We therefore direct the superior court to vacate the existing judgement against Avila and to enter a new judgement that reflects a single conviction for attempted second-degree controlled substance misconduct. We direct entry of judgement on the charge of attempt because, under the facts of Avila's case and the State's theory of prosecution, Avila's solicitation of Cummins and "Rick" to deliver heroin to him appears to have been a portion of the State's proof of the attempt charge, and thus effectively a lesser included offense.

*Avila's argument that the jury should have been instructed on his proposed lesser-included offense of soliciting Cummins to possess heroin*

Because we are directing the superior court to vacate Avila's conviction for soliciting delivery of heroin, this claim is moot.

*Avila's argument that his sentence is excessive*

Avila argues that his composite sentence of 11 years' imprisonment with 5 years sus-

11. *Id.*

12. 571 P.2d 631, 637–38 (Alaska 1977) (a hospital visit paid to the intended victim of a homicide plot, during which the assassin intended to gain the trust of the victim, was held to be a sufficient "substantial step" to support a conviction for attempted murder).

13. *See Marks v. State*, 496 P.2d 66, 67–68 (Alaska 1972) (requiring an appellate court to independently assess any concession of error by the State in a criminal case).

pended (6 years to serve) is excessive. Because Avila received partially consecutive sentences, and because we are directing the superior court to vacate one of Avila's convictions, this argument is premature. The superior court potentially may reduce Avila's sentence when it resentences Avila on the remaining count.

We therefore do not decide Avila's sentence appeal at this time. Instead, we direct the superior court to resentence Avila within 90 days of the effective date of our decision. (For that effective date, see Appellate Rules 507(b) and 512(a).) Within 30 days of the time Avila is resentenced, Avila shall notify this court whether he wishes to renew his sentence appeal. If Avila wishes to renew his sentence appeal, his case will proceed under the procedures specified in Appellate Rule 215. If Avila does not wish to renew his sentence appeal, this file will be closed.

*Conclusion*

We AFFIRM Avila's conviction for attempted second-degree controlled substance misconduct. We VACATE Avila's conviction for solicitation of second-degree controlled substance misconduct. We REMAND Avila's case to the superior court for resentencing within 90 days of the effective date of this decision. And, within 30 days of being resentenced, Avila shall tell us whether he wishes to renew his sentence appeal.