STATE of Maine

v.

David J. HARRIMAN and Joseph W. Wadman.

Supreme Judicial Court of Maine.

Argued Sept. 19, 1983.

Decided Nov. 4, 1983.

Michael E. Povich, Dist. Atty., Sophie L. Spurr, Asst. Dist. Atty. (orally), Ellsworth, for plaintiff.

Peter R. Roy (orally), George P. Kesaris, Ellsworth, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

GLASSMAN, Justice.

On August 3, 1982, the defendants, David J. Harriman and Joseph W. Wadman, were indicted for a violation of 17–A M.R.S.A. § 1103 (Pamph.1982), unlawful trafficking in a schedule Z drug. Contending that the seizure of two pounds, nine ounces of marijuana from their vehicle violated the Fourth Amendment proscription against unreasonable search and seizure, the defendants filed a pretrial motion to suppress.

The Superior Court (Hancock County), ruling that the initial "plain view" seizure of a small baggie of marijuana from the defendants' van was tainted by the seizing officer's improper motives in looking into the van, and thus the police lacked probable cause for the subsequent warrantless search of the entire vehicle, suppressed all evidence obtained as a result of the search. The state, pursuant to 15 M.R.S.A. § 2115–A (1980), appeals that order. We sustain the appeal, holding that the Superior Court improperly focused on the motives of the seizing officers, and remand the case for a further hearing on probable cause.

The court below could have found that at approximately 12:15 a.m. on July 24, 1982, Officer Kane of the Ellsworth Police Department was clearing the Maine Coast Mall parking lot of vehicles gathered in the lot after closing. Ellsworth police performed this function nightly at the request of the mall manager. Walking up to the driver's side of the van occupied by the defendants, Officer Kane observed defendant Wadman behind the wheel, apparently quite intoxicated. Using a flashlight to illuminate the interior of the vehicle, the officer also noticed several empty beer cans and an empty pint liquor bottle on the van console. According to Kane, he then requested the keys to the van from Wadman to avoid a later arrest of Wadman for operating under the influence, and Wadman promptly complied. Officer Kane informed Wadman that another officer would return the keys after Wadman had become sober. Kane thereafter summoned Officer Jameson to the scene, who apparently would return the keys to Wadman. After conferring with Kane and having been informed that Wadman was the driver, Officer Jameson, despite already knowing Wadman, approached the vehicle on the passenger side in order, according to Jameson, to "make sure who was driving the vehicle so I knew who to return the keys to . . . ." Illuminating the front interior portion of the van

with his flashlight to see Wadman, Officer Jameson observed a small baggie containing what was later determined to be marijuana lying on the van console. Jameson then seized the baggie.[1] Additionally, Jameson noticed defendant Harriman lying in the back of the van asleep. Both officers were aware that Harriman and Wadman had been previously convicted on a drug trafficking charge.

Shortly thereafter, the officers conducted a warrantless search of the entire van for additional drugs. Both officers testified that they believed probable cause for the search to be present, given the late hour, their opinion that drug trafficking at the Maine Coast Mall parking lot was a common occurrence,[2] the defendants' past convictions for drug trafficking, and the small bag of marijuana taken from the console. As a result of the search, the officers discovered an open styrofoam cooler containing nearly three pounds of marijuana.

The Superior Court suppressed the evidence found in the defendants' van. Although the justice's reasons for granting the motion to suppress are not clear from the record, the court found that the officers were looking for a reason to search the defendants' vehicle. The suppression justice suggested that Officer Jameson's approach to the van, illumination of the interior, and seizure of the small baggie of marijuana was a pretext for the full-scale search. Summing its views, the court observed:

> The so-called plain view was not just a chance, that a flashlight happened on the plastic bag. They [the police] were looking for a reason to get in. They had no probable cause.

The one clear finding of fact the Superior Court made was that Officer Jameson shone his flashlight into the defendants' vehicle not to identify the driver but in the hope of uncovering a reason to search the entire van.

■ A finding of fact supporting a suppression order will not be disturbed on appeal unless "clearly erroneous," that is, lacking *any* competent evidence in the record to support it. *State v. Thornton,* 453 A.2d 489, 492 (Me.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1520, 75 L.Ed.2d 944 (1983); *Harmon v. Emerson,* 425 A.2d 978, 981 (Me.1981); *see also Lewisohn v. State,* 433 A.2d 351, 354 (Me.1981) (Law Court does not sit as trier of fact). Due regard is accorded the trial court to judge the credibility of witnesses. *Qualey v. Fulton,* 422 A.2d 773, 775 (Me.1980); *State v. MacKenzie,* 161 Me. 123, 134–35, 210 A.2d 24, 31 (1965). The trial court is not required to believe testimony albeit uncontradicted. *Qualey,* 422 A.2d at 775.

Given this limited standard of review, we cannot say it was "clearly erroneous" for the trial court to find that Officer Jameson's testimony regarding the reasons for shining his flashlight into the van was not credible. Officer Kane had already informed Jameson that Wadman was the driver of the van, and Jameson knew Wadman from previous experience. Therefore, the court could reasonably have rejected Jameson's testimony that he walked over to the van and illuminated the interior so he would know whom to return the keys later, and concluded instead that Jameson's actions were merely a pretext for a larger search. The inquiry, however, does not end with a finding that police looked into a parked vehicle in the hope of finding some inculpatory evidence which might justify a full-scale search. We must now consider whether such action constitutes an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution.

---

1. Officer Jameson asked Wadman to hand him the baggie. Wadman complied.

2. Prior to the night in question, neither officer had made any arrests at the mall parking lot.

The officers testified that their opinion that the lot was a center for drug trafficking was based on reports of citizens and other law enforcement officials.

An individual who exposes an object to public view has no reasonable expectation of privacy in that object. *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) (plurality); *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Where such expectancy is lacking, the observation of the object does not constitute a search within the meaning of the Fourth Amendment, regardless of whether the observation is made by a police officer or private citizen. *Brown,* 103 S.Ct. at 1542; *State v. Sapiel,* 432 A.2d 1262, 1266 (Me.1981); *State v. Cowperthwaite,* 354 A.2d 173, 176 (Me.1976). Recently, when considering whether a warrantless seizure from an automobile of an opaque party balloon commonly used to package narcotics violated the Fourth Amendment, the United States Supreme Court stated:

> There is no legitimate expectation of privacy ... shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled Maples to observe the interior of Brown's car and of his open glove compartment was not a search within the meaning of the Fourth Amendment.

*Brown,* 103 S.Ct. at 1542. It is of no relevance that artificial illumination is used to enable an officer to view during the night that which could have been seen plainly during the day. *Id.* at 1541; *State v. Rand,* 430 A.2d 808, 819 (Me.1981); *State v. Chattley,* 390 A.2d 472, 476 (Me.1978).

The question of the lawfulness of the view, however, differs from that of the lawfulness of the seizure. 1 W. LaFave, *Search and Seizure* § 2.2, at 243 (1978); Moylan, *The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle,* 26 Mercer L.Rev. 1047,

1096 (1975); *cf. Washington v. Chrisman,* 455 U.S. 1, 11, 102 S.Ct. 812, 819, 70 L.Ed.2d 778 (1982) (White, J., dissenting) ("plain-view" doctrine does not authorize entry into dwelling to seize contraband merely because such contraband is visible from outside of dwelling). Where the probable evidence is discovered in a constitutionally nonprotected area, it may be seized without a warrant. Simply, the Fourth Amendment affords no protection to property which has been abandoned, or which lies in an "open field." *Hester v. United States,* 265 U.S. 57, 58–59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924); *State v. Thornton,* 453 A.2d at 495; *see Payton v. New York,* 445 U.S. 573, 586–87, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980) (weapons found in public place may be seized without first obtaining warrant). Moreover, when police lawfully enter a constitutionally protected area, and subsequently, evidence of crime comes into "plain view," such may be seized without a warrant.[3] *Brown,* 103 S.Ct. at 1540–41; *Coolidge v. New Hampshire,* 403 U.S. 443, 465–67, 91 S.Ct. 2022, 2037–39, 29 L.Ed.2d 564 (1971) (plurality); *State v. Sapiel,* 432 A.2d at 1266. For example, if police enter a dwelling with a warrant, or without a warrant but on the basis of an exception to the warrant requirement, or stop an automobile based on an articulable suspicion, evidence may be seized which subsequently falls into "plain view." *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (articulable suspicion).

A different problem arises when police are outside a constitutionally protected area looking into a place in which an individual has a reasonable expectation of privacy. The plain view sighting of contraband or evidence of crime does not, standing alone, give rise to a right to enter a constitutionally protected area to seize the

---

**3.** It must be "immediately apparent" to the seizing officer that the item is contraband or other evidence of crime. *Coolidge,* 403 U.S. at 466, 91 S.Ct. at 2038. To satisfy this requirement, police must have probable cause to associate the item with criminal activity. *Brown,*

103 S.Ct. at 1542–43. Moreover, a plurality of the Supreme Court would require that the sighting of the evidence in "plain view" be inadvertent, that is, unanticipated. *Coolidge,* 403 U.S. at 469–70, 91 S.Ct. at 2040. *But see State v. Johnson,* 413 A.2d 931, 934 n. 4 (1980).

item. As the Supreme Court observed in *Coolidge:*

> [P]lain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle ... that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses ... may establish the fullest measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Coolidge,* 403 U.S. at 468, 91 S.Ct. at 2039 (emphasis in original). As an illustration of this point the Supreme Court cited *Taylor v. United States,* 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932), where police, looking through a small opening in a garage, viewed cardboard cases which they reasonably suspected to contain illegal liquor. The Court held that the police violated the Fourth Amendment by entering the premises and seizing the whiskey without first having obtained a warrant. *Id.* at 5–6, 52

S.Ct. at 467; *cf. Steele v. United States No. 1,* 267 U.S. 498, 502–05, 45 S.Ct. 414, 416–17, 69 L.Ed. 757 (1925) (view of contraband from place where police had right to be furnished probable cause for obtaining warrant to enter and seize). Several courts and commentators have properly distinguished the right to seize probable evidence under the plain-view doctrine from the consequences flowing from a sighting of evidence in clear view within a constitutionally protected area, when police are outside that area. *E.g., State v. Kaaheena,* 59 Hawaii 23, 28–29, 575 P.2d 462, 466–77 (1978); *State v. Seagull,* 95 Wash.2d 898, 901–02, 632 P.2d 44, 46–47 (1981); *Scales v. State,* 13 Md.App. 474, 477–78 and n. 1, 284 A.2d 45, 47–48 and n. 1 (1971); LaFave, *supra* § 2.2, at 243–45; Moylan, *supra,* at 1096–1101.[4]

In the instant case, the vantage point from which Officer Jameson observed the marijuana baggie was not within a constitutionally protected area. The observation of contraband openly and patently visible to an inquisitive passerby or diligent police officer did not implicate the Fourth

4. Confusion has arisen regarding the applicability of the plain view doctrine to what Professor Moylan terms the "preintrusive" situation, that is, when police see evidence in open view within in a constitutionally protected area from without. Moylan, *supra,* at 1096. The difficulty stems in large part from a broad statement the Supreme Court made in *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), a three-page *per curiam* decision in which the Court wrote: "[i]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Id.* at 236, 88 S.Ct. at 993. This statement, however, appears to have been broader than the Court intended. The cases the Supreme Court cited in *Harris* do not support the proposition that any time an officer views evidence of crime or contraband from a position where he has a right to be, it may be seized without regard to whether the point of observation was within or without a constitutionally protected area. In *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), police lawfully entered the defendant's apartment for the purpose of effectuating an arrest, and discovered and seized therein a brick of marijuana in plain view. *Id.* at 42–43,

83 S.Ct. at 1634–35. In *United States v. Lee,* 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927), Coast Guard officials, after having lawfully arrested the defendant, seized several cases of illegal liquor in open view on the deck of the defendant's boat. *Id.* at 561–63, 47 S.Ct. at 747–48. In *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), revenue officers testified that they found illegal whiskey on land near the defendant's house. Although acknowledging that the officers were trespassers on the defendant's land, the Court declared that the protection afforded by the Fourth Amendment does not apply to open fields. *Id.* at 58, 44 S.Ct. at 446. Clearly, these cases do not authorize seizure merely by virtue of the sighting of evidence in open view. *Cf. Coolidge,* 403 U.S. at 468, 91 S.Ct. at 2039 (plain view alone does not justify warrantless seizure). Recently, in *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), Justice Rehnquist, writing for a plurality of the Court, although occasionally referring to the plain view doctrine in broad terms, observed that " 'plain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment." *Id.* at 1540.

Amendment. *Brown,* 103 S.Ct. at 1542. There was no search in a Fourth Amendment sense. Officer Jameson was therefore free to testify as to his observations, or apply for a warrant on that basis. When Jameson seized the baggie from the defendants' vehicle, however, he crossed into a constitutionally protected area. *See Coolidge,* 403 U.S. at 461, 91 S.Ct. at 2035 (word "automobile" is not "talisman in whose presence the Fourth Amendment fades away and disappears"). Therefore, some fact in addition to the mere sighting of plainly visible contraband is necessary to justify the seizure.[5]

In *State v. Stone,* 294 A.2d 683 (Me.), *cert. denied,* 409 U.S. 908, 93 S.Ct. 212, 34 L.Ed.2d 169 (1972), we were presented with a similar situation. In *Stone,* a state police officer pulled up behind a parked automobile which he had been following.[6] Shining his flashlight into the back seat, the officer observed a rifle with the clip inserted. *Stone,* 294 A.2d at 687. After noting that the observation did not constitute a search, we analyzed the officer's right to seize the rifle without a warrant. *Id.* at 688, 690–91. We stated that federal case law recognizes that:

> [I]f State law has subjected property to search and seizure, by warrant, as fruits, or instrumentality or evidence of any crime ... *so long as probable cause exists,* the warrant may be constitutionally dispensed with if there are exigent circumstances which demand immediate search and seizure, or both, to prevent likelihood of removal, concealment, destruction or other loss of the articles lawfully subject to seizure provided, of course, that the search and seizure is lim-

ited as to method, place and time to be commensurate with such exigency.

*Id.* at 691 (emphasis in original); *see Chambers v. Maroney,* 399 U.S. 42, 48–51, 90 S.Ct. 1975, 1979–81, 26 L.Ed.2d 419 (1970) (if probable cause is present, automobile may be searched without warrant in circumstances not justifying search of house). Declaring that the officer had probable cause to believe the rifle was evidence of crime and that there were accompanying exigent circumstances which made procurement of a warrant impracticable, we held that the seizure of the rifle was lawful. *Stone,* 294 A.2d at 691.

 A similar situation is presented here. Under Maine law, usable amounts of marijuana are subject to search and seizure as contraband, even though possession of such is only a civil infraction.[7] *State v. Barclay,* 398 A.2d 794, 797 (Me.1979). Moreover, Officer Jameson clearly had probable cause to believe that the baggie contained marijuana. Jameson was trained in drug identification, and the content of the baggie was plainly visible. Had Officer Jameson not immediately seized the baggie, it might have been removed, concealed, or destroyed. Exigent circumstances therefore were present, and Jameson was constitutionally entitled to seize the baggie. *Stone,* 294 A.2d at 691; *see also Price v. United States,* 429 A.2d 514, 516 (D.C.App. 1981) (easy destructability of evidence constitutes exigent circumstance).

We place no reliance on the officer's motives in originally looking into the defendants' van. The officers were performing a legitimate police duty in clearing the park-

---

**5.** Marijuana constitutes contraband notwithstanding that possession of the subject amount constitutes only a civil infraction. *State v. Bishop,* 392 A.2d 20, 26–27 (Me.1978).

**6.** The officer followed the automobile because he believed that it was being driven by teenagers in possession of liquor. *Stone,* 294 A.2d at 687.

**7.** Marijuana is a schedule Z drug, regardless of the quantity possessed. 17–A M.R.S.A.

§ 1102(4)(B) (1983). All schedule Z drugs "the unauthorized possession of which constitutes a civil violation under Title 22" are contraband, and as such, are subject to seizure. 17–A M.R. S.A. § 1114 (1983). A warrant may issue for a schedule Z drug which is contraband. M.R. Civ.P. 80I (1983). Thus, marijuana can be the object of a search warrant, even when its possession constitutes only a civil infraction pursuant to 22 M.R.S.A. § 2383 (1980). *Barclay,* 398 A.2d at 797.

ing lot. Officer Jameson was therefore entitled to be in a position to view a baggie which any inquisitive passerby or police officer could have seen. *See United States v. Vilhotti,* 323 F.Supp. 425, 431–32 (S.D.N.Y.), *aff'd in part and rev'd in part,* 452 F.2d 1186 (2d Cir.1971), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972) (where gaps between boards covering windows were apparent to any passerby, window search by police officer appropriate). Because the suppression justice's finding that the police lacked probable cause to search the entire van was based on the illegality of the initial seizure of the small baggie, we remand for a determination of whether the police, having lawfully seized the baggie, had probable cause and there existed exigent circumstances to justify the warrantless search of the entire van.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concur.