STATE of Maine

v.

**Paul ADDINGTON.**

Supreme Judicial Court of Maine.

Argued Sept. 18, 1986.
Decided Nov. 26, 1986.

**450**

James E. Tierney, Atty. Gen., Michael Westcott, Wayne S. Moss, (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Steven C. Peterson, Camden, Robert Marks, (orally), Coopers Mills, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN, SCOLNIK, and CLIFFORD, JJ.

GLASSMAN, Justice.

After a bifurcated trial, Paul Addington appeals from the judgment of the Superior court, Somerset County, entered on a jury verdict finding him guilty of murder in violation of 17–A M.R.S.A. § 201(1)(A) (1983), and, after a jury-waived hearing, a finding by the court that he was criminally responsible for his acts that resulted in the murder. *See* 17–A M.R.S.A. §§ 38, 39 and 40 (1983).

On appeal Addington challenges the orders of the trial court relating to (1) the venue of the trial, (2) the denial of his motion to dismiss the indictment, (3) the denial of his motion to suppress all his statements, (4) the admission of certain physical evidence, and (5) the sufficiency of the evidence to support the jury verdict. We find no merit in Addington's contentions and affirm the judgment.

I

On March 23, 1985, Addington, a patient at the Augusta Mental Health Institute (AMHI), was living at Northgate House on the AMHI grounds. He was allowed to leave the grounds for four hours at a time. At approximately 3:00 p.m. on March 23 Sharon Taylor, a fifteen-year-old resident of Augusta, went to the Arboretum near AMHI to go bird-watching. When she did not return home at the appointed time, a search was conducted. Her body was found in the Arboretum in the early hours of March 24, 1985. It was determined that her death was caused by multiple stab wounds inflicted sometime after 3:30 p.m. of March 23, 1985.

Addington gave statements to the police on March 25, March 26 and April 4, 1985. On June 7, 1985, he was arraigned on an indictment charging him with the murder of Sharon Taylor, entered a plea of not guilty[1] and was denied bail. While in the county jail awaiting trial, Addington made statements to Sheriff Frank Hackett and to a fellow inmate, Jack Michaud.

After hearing, the court granted Addington's motion for change of venue from Kennebec County, stating that the trial location would be designated at a later date. On the morning of the trial, the court denied Addington's oral motion for change of venue of the trial from Somerset County.

Addington filed motions to suppress all statements made by him. After hearing, the court entered its order granting Addington's motion as to that portion of the statement made to the police on April 4, 1985 that continued after Addington had stated he no longer wanted to talk. The court also ruled, in accordance with a stipulation of the parties, that Addington's statement to Sheriff Hackett and the map drawn by Addington while making the statement were involuntary and obtained in violation of his rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and of his

---

1. Prior to trial, the additional plea of not guilty by reason of insanity was entered by Addington.

right to counsel. The court ordered that they be suppressed, but denied Addington's motions as to the remainder of the statements. On October 25, 1985, Addington's motion to dismiss the indictment on the ground that his post-indictment conversation with Sheriff Hackett violated rights guaranteed to him by the fifth and sixth amendments of the United States Constitution was denied by the court.

Over the objection of Addington the court admitted in evidence at the trial photographs of the victim at the crime scene, items of the victim's clothing, and a collection of knives from Addington's residence offered as the State's exhibits.

After the jury returned its verdict, the court in a jury-waived hearing found Addington criminally responsible for the murder of Sharon Taylor. Addington's motions for a judgment of acquittal notwithstanding the verdict and for a new trial were denied by the trial court.

## II

On appeal, Addington claims the trial court abused its discretion in denying his motion to change the venue of the trial of the case from Somerset County. He argues that the prejudice caused by the pretrial publicity that prevented a fair trial being had in Kennebec County also obtained in Somerset County, as evidenced by copies of news media coverage enclosed in his letter to the trial court in December, 1985.

■ Ordinarily the determination of venue is within the sound discretion of the presiding justice, and will not be overturned absent a showing of abuse of that discretion. *State v. Coty*, 229 A.2d 205, 210 (Me.1967). However, the fourteenth amendment of the United States Constitution may require a change of venue if facts demonstrate "both intensive and extensive pre-trial publicity of an invidious nature tending to arouse general ill will and vindictiveness against the accused. [citations omitted] It is our obligation to examine both the quantity and quality of the pre-tri-

al publicity which is made a part of the record on appeal in order to determine whether the appellant has demonstrated such a violation." *State v. Ifill*, 349 A.2d 176, 179 (Me.1975).

■ To apply this standard of review for an abuse of discretion we must have a record of the publicity. The record in this case lacks Addington's December 1985 letter to the court, the allegedly prejudicial news articles, the transcript of the motion hearing, and the transcript of the jury selection from which the publicity's impact might be gauged. *See State v. Ifill*, 349 A.2d at 180; *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).

We have consistently held that an appellant before us " 'has the affirmative duty of supplying this Court with an adequate record upon which consideration can be given to the arguments advanced in support of the appeal.' " *State v. Meyer*, 423 A.2d 955, 956 (Me.1980) (quoting *Summit Realty, Inc. v. Gipe*, 315 A.2d 428, 429 (Me. 1974)). By his failure to comply with this mandate, Addington has failed to demonstrate any constitutional violation or abuse of the trial court's discretion in its ruling on his motion for change of venue from Somerset County. *See State v. Meyer*, 423 A.2d at 956.

## III.

Addington asserts the trial court erred in denying his motion to dismiss the indictment. He argues, as he did before the trial court, that the court's order suppressing his statement to Sheriff Hackett and the map drawn during that interview did not adequately rectify the violation of rights guaranteed to him by the sixth amendment.

We are bound by decisions of the United States Supreme Court on questions concerning the federal constitution. The right of an accused to have the assistance of counsel for his defense provided by the sixth amendment assures fairness in the adversary criminal process and is funda-

mental to our system of justice. *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). In general, remedies for sixth amendment deprivations should be tailored to the injury, and "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *United States v. Morrison*, 449 U.S. 361, 364–365, 101 S.Ct. 665, 667–668, 66 L.Ed.2d 564 (1981). The remedy for evidence obtained before trial in violation of a defendant's right to counsel has been suppression of the evidence. *Id.* at 365, 101 S.Ct. at 668; *see, e.g., Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *cf. United States v. Blue*, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966) (fifth amendment violation).

■ Addington has not shown how the violation deprived him of effective representation by his counsel or a fair trial. All the tainted evidence was suppressed. Absent a showing of prejudice dismissal was not appropriate. *United States v. Morrison*, 449 U.S. at 365, 101 S.Ct. at 668. The Superior Court properly denied the motion to dismiss.

### IV

Addington next contends that the trial court erred in denying his motions to suppress all his statements to the police and his statement to Michaud. He asserts that his mental illness precluded the exercise of his free will and rational intellect making the waiver of his constitutional rights and the statements themselves involuntary. We disagree.

Conflicting expert testimony was presented to the trial court as to Addington's mental capacity at the time he made the challenged statements. In addition the court reviewed the taped recordings of the police interviews.

■ The State acknowledges its burden in this case to prove by a preponderance of the evidence that Addington knowingly and voluntarily waived his constitutional rights prior to making any statements to the police, and to prove beyond a reasonable doubt that his statements to the police and to Michaud were voluntary. *State v. Knights*, 482 A.2d 436, 440 (Me.1984); *State v. Collins*, 297 A.2d 620, 627 (Me. 1972). At the hearing on Addington's motions to suppress, it was for the trial court as the factfinder to decide the credence to be given the various expert witnesses. *See State v. Reardon*, 486 A.2d 112 (Me.1984). We will not disturb the trial court's findings of fact supporting a suppression order unless there is no competent evidence in the record to support it. *State v. Tribou*, 488 A.2d 472, 475 (Me.1985); *State v. Harriman*, 467 A.2d 745, 747 (Me.1983).

■ In support of the trial court's findings the record discloses that Addington demonstrated his ability to exercise his *Miranda* rights, by refusing to continue to talk during one police interview, refusing to talk to Augusta police officers and refusing to undergo certain tests offered by the police. We hold that the record in this case rationally supports the conclusion that Addington's waiver of his *Miranda* rights was knowing, understanding and voluntary and his statements that were not suppressed by the trial court were voluntary.

### V

Addington argues that the prejudicial effect of photographs of the victim at the scene, the victim's bloody clothing, and knives taken from his residence [2] substantially outweighed their probative value and, accordingly, the trial court erred in admitting them into evidence. We disagree.

■ Maine Rule of Evidence 403 provides that relevant evidence may be exclud-

---

**2.** Because at trial Addington's objection to the admission of the knives was based on an improper chain of custody and he did not object to the admission of the victim's chamois shirt, we review his present contention of undue prejudice in their admission using the obvious error standard. M.R.Crim.P. 52(b); M.R.Evid. 103(d).

ed if its probative value is substantially outweighed by the danger of unfair prejudice. This balancing is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. *State v. Smith*, 472 A.2d 948, 949–50 (Me.1984).

In the instant case, the photographs were not inflammatory. They depicted the area where the victim's body was found, and the abrasions on the victim's neck. The photographs were probative of the isolation of the area, signs of struggle by the victim and the type of weapon used in the murder. The four items of the victim's clothing admitted in evidence were probative of the violence of the struggle between the victim and her assailant. Although none of the knives taken from the kitchen drawer in Northgate House, Addington's residence at AMHI, were offered as the murder weapon, they were probative of his access to and as the likely type of weapon used to inflict the wounds causing the victim's death. All of these items were probative as to the identity of Addington as the assailant of Sharon Taylor.

The probative value of these items was not substantially outweighed by their prejudicial effect. The trial justice properly exercised his discretion in admitting these items in evidence. *Cf. Smith*, 472 A.2d at 950.

## VI

Finally, Addington contends that the evidence was not sufficient to support the jury's verdict. He points to inconsistencies in the evidence relating to the identity of Addington as the assailant of Sharon Taylor. The jury resolved these inconsistencies and possible alternatives against Addington. *State v. Fournier*, 267 A.2d 638, 641 (Me.1970).

We have frequently stated the applicable standard to be used on our review of the legal sufficiency of evidence to support a verdict. *State v. Barry*, 495 A.2d 825, 826 (Me.1985). Applying that standard to the instant case, we have reviewed the evidence in the light most favorable to the prosecution, and hold it was sufficient for the jury rationally to find beyond a reasonable doubt that Addington was guilty of the offense with which he was charged.

The entry is:

Judgment affirmed.

All concurring.