**STATE of Maine**

v.

**Kevin COOPER.**

Supreme Judicial Court of Maine.

Argued Nov. 18, 1992.
Decided Dec. 14, 1992.

R. Christopher Almy, Dist. Atty., Jeffrey Silverstein (orally), Asst. Dist. Atty., Bangor, for the State.

Schuyler G. Steele (orally), Newport, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Kevin Cooper appeals from the judgments entered in the Superior Court (Penobscot County, *Smith, J.*) following a jury trial that resulted in Cooper's conviction on charges of attempted murder, robbery, and aggravated assault.

On September 6, 1990, the victim was attacked with a knife, seriously wounded, and left lying in a wooded area in Glenburn. Three weeks later, Cooper was arrested in Topsfield, Massachusetts in the possession of the victim's automobile. After being held in Topsfield for a few hours, Cooper was transferred into the custody of two law enforcement officers of the Penobscot County Sheriff's Department, Frederick Clarke, Jr. and James Wooster. During the return trip to Bangor, Cooper was questioned and, as a result, made some incriminating statements. After his indictment, Cooper sought to suppress statements made during his trip from Massachusetts to Bangor. The Superior Court, (Penobscot County, *Kravchuk, J.*) concluded that all statements made by Cooper were voluntary and that no violation of the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), had taken place. Shortly before trial, the Superior Court (Penobscot County, *Smith, J.*) denied Cooper's motion for a change of venue based on Cooper's assertion that substantial pretrial publicity precluded him from impaneling an impartial jury. During the course of his trial, Cooper's attorney attempted to elicit testimony concerning reasons why the victim retired from his position at the University of Maine at Presque Isle contending that such testimony was appropriate in that it concerned the victim's ability to tell the truth on the witness stand and also reflected the victim's state of mind at the time of the attack. The trial court sustained the

state's objection on the ground of relevance.

Following trial, the jury returned a guilty verdict on all the counts and Cooper was sentenced on the attempted murder conviction to thirty years with all but twenty-seven years suspended, and four years probation on his release from prison, and concurrent sentences of twenty years on the robbery count, and ten years on the aggravated assault count.

Thereafter, Cooper filed a timely notice of appeal and, in addition, sought sentence review. Leave to appeal from the sentence was granted to be considered with the appeal. *See* 15 M.R.S.A. § 2152 (Supp.1991). We affirm both the convictions and the sentences.

## I.

### COOPER'S MOTION TO SUPPRESS

Cooper first argues that during the trip from Massachusetts to Bangor, he was under the influence of drugs adversely affecting his mental faculties and making him incapable of knowingly and voluntarily waiving his rights against self-incrimination. The trial court found otherwise, reasoning that "the objective evidence coupled with the testimony of Officers Clarke and Wooster suggest the [defendant] is not out of touch with reality and lacking in the requisite mental faculties to waive his rights and make a statement to the police." The trial court concluded that "beyond a reasonable doubt ... the state has shown that these statements were voluntary...."

■ We review the trial court's finding as to *Miranda* issues for clear error. *State v. Thompson,* 603 A.2d 479, 480 (Me. 1992); *State v. Leone,* 581 A.2d 394, 397 (Me.1990). "The hearing justice's determination that a statement was voluntary will not be overturned if the evidence rationally supports that determination." *State v. Bragg,* 604 A.2d 439, 440 (Me.1992).

■ In ruling on the admissibility of the defendant's statements, the trial court must find by a preponderance of the evidence that he knowingly, intelligently, and voluntarily waived his *Miranda* rights, and that his statements were voluntary beyond a reasonable doubt. *State v. Gosselin,* 594

A.2d 1102, 1105 (Me.1991); *State v. Bleyl,* 435 A.2d 1349, 1358 (Me.1981); *State v. Collins,* 297 A.2d 620, 626–27 (Me.1972). The trial justice's determination in the present case that Cooper's statements were voluntary and not in violation of *Miranda* is rationally supported by the evidence presented at the suppression hearing and, therefore, is not clearly erroneous.

■ Deputy James Wooster testified that he read Cooper his *Miranda* rights and that Cooper provided an oral response of "yes" to each segment. Furthermore, Wooster noticed nothing unusual about Cooper's physical and mental condition. In fact, Wooster stated that Cooper gave appropriate answers to all of the questions asked by Detective Clarke. Detective Clarke, an investigator experienced in observing drug users, also testified that he noticed nothing unusual about Cooper's reactions or his responses to questions that would indicate that he was impaired. Finally, the Superior Court's finding is further supported by the striking detail with which Cooper testified concerning his activities on the day of his interrogation. In particular, he remembered being read his rights and stated that he knew what his rights were.

There was no evidence presented indicating that the officers acted in a coercive or intimidating manner. Rather, the officers testified that Cooper was both calm and responsive to questioning. Additionally, Cooper was aware of the nature of the charges pending against him in Maine. Finally, Cooper failed to present any medical evidence demonstrating that his state of mind was impaired at the time of the questioning by the two sheriffs. Rather, Cooper simply testified that he "smoked some weed and smoked some crack" on the morning of the interview. Even if the Court believed that testimony, that fact alone does not compel a finding that the defendant was unable to understand and voluntarily waive his rights. *See State v. Tribou,* 488 A.2d 472, 475 (Me.1985) (defendant had been drinking and smoking marijuana); *State v. Finson,* 447 A.2d 788, 792 (Me.1982) (even a person heavily intoxicat-

ed is not necessarily incapable of waiving constitutional rights). Therefore, in light of the evidence introduced at the suppression hearing, the record rationally supports the conclusion that Cooper's waiver of his *Miranda* rights was knowing, intelligent, and voluntary, and that the statements he made were voluntary. As a result, the Superior Court did not commit clear error.

## II.

### COOPER'S MOTION FOR CHANGE OF VENUE

█ Cooper's motion for a change of venue was based on his assertion that the case had attracted substantial pretrial publicity in both the Bangor and Presque Isle areas making "the selection of an impartial jury nearly impossible." As the State correctly points out, Cooper has failed to provide us with a transcript of the hearing on the motion for a change of venue. In addition, he failed to attach to his motion any exhibits in support of his position. In short, the record does not contain any examples of "substantial pretrial publicity" or "considerable press coverage."

We have consistently held that the appellant "has the affirmative duty of supplying this court with an adequate record on which consideration can be given to the arguments advanced in support of the appeal." *State v. Addington,* 518 A.2d 449, 451 (Me.1986); *State v. Meyer,* 423 A.2d 955, 956 (Me.1980) (quoting *Summit Realty, Inc. v. Gipe,* 315 A.2d 428, 429 (Me. 1974)). In *Addington,* 518 A.2d at 451, we could not review the trial court's denial of the defendant's motion for a change of venue because the defendant failed to include in the record "the allegedly prejudicial news articles, the transcript of the motion hearing, and the transcript of the jury selection from which the publicity's impact might be gauged." *Id.* Similarly, in *State v. Johnson,* 479 A.2d 1284, 1286 (Me.1984), we concluded that "[a]ny argument that defendant may have that the publicity in this case was so prejudicial as to render a fair trial within Cumberland County an impossibility is defeated by defendant's failure to make a record of any pretrial publicity." *Id.*

Ordinarily the determination of venue is within the sound discretion of the trial court, and will not be overturned absent a showing that either (1) the court abused that discretion, or (2) there exists facts demonstrating "intensive and extensive pretrial publicity of an invidious nature tending to arouse general ill will and vindictiveness against the accused." *Addington,* 518 A.2d at 451 (citations omitted); *State v. Coty,* 229 A.2d 205, 210 (Me.1967). In the latter instance, a change of venue is mandated by the fourteenth amendment of the United States Constitution. *Addington,* 518 A.2d at 451; 1 D. Cluchey & M. Seitzinger, *Maine Criminal Practice,* § 21.5, at V–17 (1992). However, in the present case, by failing to comply with his affirmative obligation to provide an adequate record, Cooper has failed to demonstrate any constitutional violation or abuse of the trial court's discretion in its ruling on his motion for change of venue from Penobscot County. *See Addington,* 518 A.2d at 451.

## III.

### TESTIMONY CONCERNING THE VICTIM'S DEPARTURE FROM HIS JOB

█ During the course of the trial, Cooper's attorney asked the victim the following question on cross-examination: "Did you actually retire from the University of Maine at Presque Isle, or did you resign?" The state objected on the ground that the testimony would be irrelevant. The court sustained the state's objection. Cooper's attorney argued at trial, and reasserts on appeal, that the testimony was relevant for two reasons. First, he asserts that the victim lied on direct examination when he stated that he retired from the University. In particular, Cooper believes that the victim resigned because his sexual orientation had become known and that he was involved in an unspecified incident involving one of his students at the University. Second, Cooper contends that, during discovery, information was revealed indicating that the victim was "in a distraught frame of mind at the time this incident occurred."

Therefore, Cooper apparently believes that the possibility exists that the victim inflicted the wounds on himself through a "botched suicide attempt." Although the court did not permit an inquiry into the circumstances surrounding the victim's departure from the University, it did allow Cooper's attorney to ask a brief question concerning his mental state in September of 1990. The entire exchange regarding this issue is set forth below:

Q: Now, [victim], we've been talking about the period of around September of 1990, do you recall being in a distraught mental state at that time?

A: Not particularly, no.

Q: So you believe that your life was generally going fairly well at that time?

A: I think so, yes, not perfect, but—.

The court offered two grounds in support of its decision to support the state's objection: (1) lack of relevance, and (2) Rule 403 of the Maine Rules of Evidence.[1] The court noted "I'm not convinced that it is relevant. And if it is, it seems to me that—that it's extremely tenuous. It seems to me that opens up things that are not called for here, so even on 403 grounds, I would exclude it."

Even if this court were to assume, without deciding, that the proffered testimony is relevant, the Superior Court's decision to nevertheless exclude it on Rule 403 grounds was not an abuse of discretion. A trial justice enjoys broad discretion in determining the scope and manner of cross-examination. *State v. White*, 456 A.2d 13, 15 (Me.1983); M.R.Evid. 611(a), 611(b). The exercise of that discretion will be upheld on appeal unless it interferes with the rights of the parties to a fair trial. *State v. Rolls*, 599 A.2d 421, 422 (Me.1991). We emphasized the breadth of that discretion in *State v. Mylon*, 462 A.2d 1184, 1187 (Me.1983), by stating:

On sets of facts that appear identical for all that the appellate records can reveal, one judge may admit the proffered evidence, while another judge may exclude it; and yet it may well be that neither

will have committed any reversible error. An appellate court will find no error on the part of either, in absence of a clear showing of an abuse of discretion.

*Id.*

## IV.

## SUFFICIENCY OF THE EVIDENCE

■ Cooper next argues that the Superior Court erred by failing to enter a judgment of acquittal following the trial urging that no reasonable fact finder could have found the defendant to be guilty beyond a reasonable doubt. The standard for determining whether there was sufficient evidence to support a conviction "is whether, based on that evidence viewed in the light most favorable to the prosecution, any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Eaton*, 577 A.2d 1162, 1167 (Me.1990) (quoting *State v. Barry*, 495 A.2d 825, 826 (Me.1985)). We must defer to the jury's decisions as to the credibility and weight of the various items of testimony and other evidence and can vacate a guilty verdict only if the jury rationally could not have reached that conclusion on the basis of the evidence before it. *State v. Caouette*, 462 A.2d 1171, 1176 (Me.1983).

Applying those standards to the present record on appeal, it cannot be said that the jury acted irrationally in concluding beyond a reasonable doubt that Cooper was guilty of any of the offenses charged. First, the victim testified that he was alone with Cooper when Cooper attacked him with the knife and left him to die. Second, Cooper's fingerprints were found on a bank bag taken from the victim's car. Third, Cooper was eventually apprehended in the possession of the victim's car. Finally, Cooper's own admissions, which were found to be voluntary beyond a reasonable doubt, further link Cooper to the attack. Thus, the record contains ample evidence sufficient to support the jury verdict.

---

1. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or mis-

leading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

## V.

### THE SENTENCE APPEAL

Cooper's appeal from his sentence rests on 15 M.R.S.A. § 2155(1) (Supp.1991) which states:

In reviewing a criminal sentence, the Supreme Judicial Court shall consider:

**1. Propriety of sentence.** The propriety of the sentence, having regard to the nature of the offense, the character of the offender, the protection of the public interest, the effect of the offense on the victim and any other relevant sentencing factors recognized under law; ....

*Id.*

Cooper sets forth three primary reasons why he believes the Superior Court's sentence was excessive: (1) he had no prior felony record; (2) the evidence, in his view, suggested a lack of premeditation; and (3) Cooper's negative probation history with respect to misdemeanors was not suggestive of a lack of any potential rehabilitation.

 Before imposing a particular sentence, "the court must first determine a basic sentence by considering the particular nature and seriousness of the offense, without regard to the circumstances of the offender." *State v. Weir*, 600 A.2d 1105, 1106 (Me.1991) (citations omitted). Thereafter, the court should apply its discretion to determine the degree of mitigation called for by the circumstances of the offender and the degree of aggravation indicated by specific factors demonstrating a likelihood of re-offending. In making this determination, the sentencing court is granted wide discretion in selecting the sources of mitigating circumstances and aggravating factors, provided they are factually reliable. Finally, the sentencing court is accorded great deference in weighing these factors in order that it may appropriately individualize each sentence. *See id.*

 In this case, the record reflects that the Superior Court did not misapply any of the sentencing principles in imposing a thirty year sentence, all but twenty-seven years suspended with four years probation following Cooper's release and concurrent sentences of twenty and ten years on the other charges. The court cited the need to protect society as a primary ingredient in its sentence. Emphasis was placed on the savage and brutal nature of the attack and the fact that Cooper left the victim to die in the woods where his open wounds became infested with maggots. It is difficult to imagine a more heinous and violent crime, short of murder, and therefore a basic sentence within the expanded range of twenty to forty years is clearly justified. *See State v. Lewis*, 590 A.2d 149, 150 (Me.1991). Therefore, contrary to Cooper's contentions on appeal, the Superior Court's sentences are not excessive and should be affirmed.

The entry is:

Judgments and sentences affirmed.

All concurring.